## DANCIGER ET AL., DOING BUSINESS AS DAN-CIGER BROTHERS, *v.* COOLEY.

**ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.**

No. 37. Submitted November 14, 1918.—Decided January 7, 1919.

Section 239 of the Criminal Code made it an offense for "any railroad company, express company, or other common carrier, or any other person . . . in connection with the transportation" of intoxi-cating liquor, from one State into another, to collect the purchase price, or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or in any manner to act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, save only in the actual transportation and delivery.

*Held:* (1) In view of the conditions giving rise to the act and the report of the Senate Committee, that the practice of collecting the price at destination, as a condition to delivery, was the evil aimed at. P. 327.

(2) That such collections when made by an agent of the seller consti-tuted the offense no less than when made by a common carrier or its agent. *Id.*

The rule that where particular words of description are followed by general terms the latter will be regarded as applicable only to persons or things of a like class is never applied when to do so will give to a statute an operation different from that intended by the body enact-ing it. P. 326.

Transportation is not completed until the shipment arrives at destina-tion and is there delivered. P. 327.

Whether in a state court a principal may recover from an agent money collected by the latter in carrying out an arrangement be-tween them which involved a violation of Criminal Code, § 239, *held* a matter of local law not reëxaminable by this court. P. 328.

98 Kansas, 38, 484, affirmed.

THE case is stated in the opinion.

*Mr. Edwin A. Krauthoff* for plaintiffs in error. *Mr. Harry L. Jacobs, Mr. I. J. Ringolsky* and *Mr. M. L. Fried-man* were also on the brief:

Shippers' order shipments are legal. *Norfolk & Western Ry. Co.* v. *Simms,* 191 U. S. 441, 447; *American Express Co.* v. *Iowa*, 196 U. S. 133, 143.

Section 239 of the Criminal Code refers only to railroad carriers and their employees. The opinion of the Supreme Court of Kansas, holding otherwise, is in conflict with the decisions of the federal courts. *First National Bank* v. *United States*, 206 Fed. Rep. 374, 378; 29 Ops. Atty. Gen. 58, 62; *Danciger* v. *Stone*, 188 Fed. Rep. 510; *U. S. Express Co.* v. *Friedman*, 191 Fed. Rep. 673; *United States* v. *87 Barrels of Wine*, 180 Fed. Rep. 215, 216.

The shipments were within the protection of the commerce clause and the Wilson Act, notwithstanding they were consigned to the shipper's order instead of to the purchaser directly. And § 4398, Kans. Gen. Stats., 1909, forbidding a consignee to give an order on the carrier to enable some other person to obtain the liquor was violative of the commerce clause as here applied. *Rosenberger* v. *Pacific Express Co.*, 241 U. S. 48; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 27; *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197, 203; *Southern Operating Co.* v. *Hays*, 236 U. S. 188; *Norfolk & Western Ry. Co.* v. *Simms*, 191 U. S. 441, 447; *Kirmeyer* v. *Kansas*, 236 U. S. 568, 572; *American Express Co.* v. *Iowa*, 196 U. S. 144; *Clark Distilling Co.* v. *Western Maryland Ry. Co.*, 242 U. S. 311; *Adams Express Co.* v. *Kentucky*, 236 U. S. 129. Besides, by a later law, Congress had explicitly excepted deliveries "upon the written order in each instance of the bona fide consignee." Penal Code, § 238. The fact that Congress deemed it essential to enact this provision shows that the Wilson Law did not, or was not intended to, have the effect of permitting state legislation on the subject. But even if the Wilson Law did grant the State such right, this later enactment is exclusive. *Palmer* v. *Southern Express Co.*, 129 Tennessee, 116; *Blunk* v.

*Waugh*, 32 Oklahoma, 625; *McCord* v. *State*, 2 Okla. Crim. Rep. 214.

No brief filed for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

Danciger Brothers, who conducted a mail-order liquor business in Kansas City, Missouri, brought this suit in a Kansas court to recover from Cooley certain moneys collected by him, under an arrangement with them, as the purchase price of intoxicating liquors sold by them in interstate commerce, and also to enforce a similar claim assigned to them by another liquor dealer. After issue and trial Cooley prevailed and the judgment was affirmed; the appellate court holding that the arrangement under which the moneys were collected involved a violation of § 239 of the Criminal Code of the United States, c. 321, 35 Stat. 1136, and that, applying the settled rule of the Kansas courts, a principal who employs an agent to make collections in violation of a criminal law cannot compel the agent to account for what he collects. 98 Kansas, 38 and 484. The case is here on writ of error sued out prior to the Act of September 6, 1916, c. 448, 39 Stat. 726.

These are the facts: During the year 1910 Danciger Brothers received through the mails several orders for whiskey from customers in Topeka, Kansas, and in each instance shipped the liquor from Kansas City, Missouri, to Topeka, as freight. Each package was consigned to the shipper's order and was to be delivered by the carrier only on the surrender of the bill of lading properly endorsed. A sight draft was drawn on the customer for the purchase price and this with the bill of lading attached was sent to Cooley under an arrangement whereby he was to collect the draft, was then to hand the bill of lad-

ing suitably endorsed to the customer to enable the latter to get the package from the carrier, and ultimately was to remit to Danciger Brothers the amount collected less a commission for the service rendered. Before this arrangement was made the banks had refused to make such collections.

The assigned claim need not be separately described, for it was essentially like the other.

As the transactions occurred before the passage of the Webb-Kenyon Act, c. 90, 37 Stat. 699, we are not concerned with it, but only with the situation theretofore existing.

Whether § 239 of the Criminal Code reaches and embraces acts done by an agent such as Cooley was in this instance, or is confined to acts of common carriers and their agents, is a question about which there has been some contrariety of opinion, and it is now before this court for the first time. Of course, the chief factor in its solution must be the words of the statute. Omitting what is irrelevant here, they are:

"Sec. 239. Any railroad company, express company, or other common carrier, or any other person who, in connection with the transportation of any . . . intoxicating liquor . . . from one State . . . into any other State, . . . shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined," etc.

A reference to the conditions existing when the section was enacted, in 1909, will, together with its words, conduce to a right understanding of the evil at which it is aimed and the relief it is intended to afford. The condi-

tions were these: In some of the States there were
state-wide laws prohibiting the manufacture and sale of
intoxicating liquor; in some there was a like prohibition
operative only in particular districts, and in other States
the business was lawful. But the prohibitory laws did not
reach sales or transportation in interstate commerce, for
under the Constitution of the United States that was a
matter which only Congress could regulate. True, there
was a regulation by Congress, known as the Wilson Act,
c. 728, 26 Stat. 313, which subjected liquor transported
into a State to the operation of the laws of the State
enacted in the exercise of its police power, but the time
when the liquor was thus to come within the operation
of those laws was after the shipment arrived at the point
of destination and was there delivered by the carrier.
*Rhodes* v. *Iowa*, 170 U. S. 412, 426. Thus a State, al-
though able effectively to prohibit the manufacture and
sale of liquor within its own territory, was unable to pre-
vent its introduction from other States through the chan-
nels of interstate commerce. Of course, the real purpose
of the prohibitory laws was to prevent the use of liquor
by cutting off the means of obtaining it. But with the
channels of interstate commerce open those laws were
failing in their purpose, for dealers in States where it was
lawful to sell were supplying the wants of intending users
in States where manufacture and sale were prohibited.
This interstate business generally was carried on by means
of orders transmitted through the mails and of ship-
ments made according to some plan whereby ultimate
delivery was dependent on payment of the purchase
price. The plans varied in detail, but not in principle or
result. All included the collection of the purchase price
at the point of destination before or on delivery. One
made the carrier having the shipment the collecting
agent; another committed the collections to a separate
carrier, the liquor being forwarded as railroad freight

and the bill of lading being sent to an express company
with instructions to hand it to the buyer when the money
was paid; and still another made use of an agent, such as
Cooley was here, the bill of lading being sent to him with
a sight draft on the buyer for the purchase price. In
some instances the liquor was consigned to the buyer
and in others to the shipper's order, the bill of lading then
being suitably endorsed by the shipper.

Where the transactions were real and not merely color-
able, the business so conducted was lawful interstate
commerce and entitled to protection as such until the
sale and transportation were consummated by the delivery
of the liquor to the vendee at the point of destination.
Such was the decision of this court in *American Express
Co.* v. *Iowa*, 196 U. S. 133, a case which arose out of the
transportation into the State of Iowa of a collect-on-
delivery shipment of liquor ordered from a dealer in Illi-
nois. The Supreme Court of Iowa had held that, as the
sale was to be completed in that State by payment and
delivery there, the laws of the State enacted to prevent
sales of liquor therein applied. This court reversed that
ruling and said in the opinion, pp. 143, 144:

"The right of the parties to make a contract in Illinois
for the sale and purchase of merchandise, and in doing
so to fix by agreement the time when [and] the condition
on which the completed title should pass, is beyond ques-
tion. The shipment from the State of Illinois into the
State of Iowa of the merchandise constituted interstate
commerce.

\*    \*    \*    \*    \*    \*    \*    \*

"When it is considered that the necessary result of the
ruling below was to hold that wherever merchandise
shipped from one State to another is not completely de-
livered to the buyer at the point of shipment so as to be
at his risk from that moment the movement of such mer-
chandise is not interstate commerce, it becomes appar-

ent that the principle, if sustained, would operate materially to cripple if not destroy that freedom of commerce between the States which it was the great purpose of the Constitution to promote. If upheld, the doctrine would deprive a citizen of one State of his right to order merchandise from another State at the risk of the seller as to delivery. It would prevent the citizen of one State from shipping into another unless he assumed the risk; it would subject contracts made by common carriers and valid by the laws of the State where made to the laws of another State, and it would remove from the protection of the interstate commerce clause all goods on consignment upon any condition as to delivery, express or implied. Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce by means of bills of lading to the shipper's order with drafts for the purchase price attached, and many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof."

After that decision the matter of further regulating interstate commerce in liquor was much considered in Congress, and as a result of extended hearings conducted by the Committee on the Judiciary of the Senate that committee, speaking through Senator Knox, proposed the enactment of what afterwards became §§ 238–240 of the Criminal Code. The report of the committee shows that its attention was directed to the practice of shipping liquor from one State into another, to be paid for as a condition to delivery, and that the committee regarded it as an evil which should be met and corrected.

With the conditions just described in mind we come to examine § 239. It consists of two parts, both relating to liquor transported from one State into another. The first deals with the collection of the purchase price, and

the second with acts done "for the purpose of buying or selling or completing the sale" of "any such liquor." If the meaning of the first is affected by the second it is not in a restrictive way, but the reverse, so, if Cooley and his acts are within the first, the second need not be noticed further. The first, as before quoted, says:

"Any railroad company, express company, or other common carrier, or any other person who, in connection with the transportation of any . . . intoxicating liquor . . . from one State . . . into any other State, . . . shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, . . . shall be fined," etc.

The words "any railroad company, express company, or other common carrier," comprehend all public carriers; and the words "or any other person" are equally broad. When combined they perfectly express a purpose to include all common carriers and all persons; and it does not detract from this view that the inclusion of railroad companies and express companies is emphasized by specially naming them. To hold that the words "or any other person" have the same meaning as if they were "or any agent of a common carrier" would be not merely to depart from the primary rule that words are to be taken in their ordinary sense, but to narrow the operation of the statute to an extent that would seriously imperil the accomplishment of its purpose. The rule that where particular words of description are followed by general terms the latter will be regarded as applicable only to persons or things of a like class is invoked in this connection, but it is far from being of universal application, and never is applied when to do so will give to a statute an operation different from that intended by the body enacting it. Its proper office is to give effect to the true intention of that body, not to defeat it. *United States* v. *Mescall*, 215 U. S. 26.

Without question the practice of collecting the purchase price at the point of destination as a condition to delivery is the thing at which the statute is aimed. Through that practice the sale of liquor in interstate commerce was rapidly increasing. But, as before shown, such collections were not confined to carriers and their agents, but often were made by others. In principle and result there was no difference; the evil was the same in either event. Besides, if the statute were made applicable only to carriers and their agents, it could be evaded so readily by having other collectors that it would accomplish nothing. The volume of the business and the attending mischief would be unaffected. Doubtless all this was in mind when the statute was drafted and accounts for its comprehensive terms. That the words "or any other person" are intended to include all persons committing the acts described is, as we think, quite plain.

To be within the statute it is essential that the act of collecting the purchase price be done "in connection with the transportation of" the liquor. The statute does not say "in the transportation," but "in connection with" it. Transportation, as this court often has said, is not completed until the shipment arrives at the point of destination and is there delivered. *Rhodes* v. *Iowa*, 170 U. S. 412, 415, 420; *Vance* v. *Vandercook Co.*, 170 U. S. 438, 451; *Louisville & Nashville R. R. Co.* v. *Cook Brewing Co.*, 223 U. S. 70, 82; *Kirmeyer* v. *Kansas*, 236 U. S. 568, 572; *Rosenberger* v. *Pacific Express Co.*, 241 U. S. 48, 50. What Cooley did, while not part of the transportation, was closely connected with it. He was at the point of destination and held the bill of lading, which carried with it control over the delivery. Conforming to his principal's instructions he required that the purchase price be paid before the bill of lading was passed to the vendee. The money was paid under that requirement and he then turned over the bill of lading. A delivery of the shipment

followed and that completed the transportation. Had the carrier done what he did all would agree that the requisite connection was present. As the true test of its presence is the relation of the collection, rather than the collector, to the transportation, it would seem to be equally present here.

We conclude that § 239 reaches and embraces acts done by an agent such as Cooley was. The ruling on the right of a principal to recover from an agent money received by the latter in carrying out an arrangement between them which involved the violation of a criminal statute turned on a question of local law and cannot be reëxamined here.

*Judgment affirmed.*