MURPHY v. UNITED STATES.

CHAPPELL et al. v. SAME.

McKEE et al. v. SAME.

Nos. 8978, 8979, 8993.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1943.

Jack Keefe, of Nashville, Tenn. (Jack Norman and Jack Keefe, both of Nashville, Tenn., on the brief), for appellants.

Brandon Lewis, of Nashville, Tenn. (Horace Frierson, Jr. and Brandon Lewis, both of Nashville, Tenn., on the brief), for appellee.

Before HICKS, ALLEN and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

These are appeals from judgments entered on jury verdicts finding appellants guilty of certain violations of §§ 88 and 409 of Title 18, U.S.C., 18 U.S.C.A. §§ 88, 409.

Appellants were charged under various indictments, all of which related to the theft or disposition of certain cigarettes alleged to have been stolen from a railroad warehouse at Columbia, Tennessee, while they were a part of interstate freight shipments. The first count of indictment 959 charged appellants McKee and Chappell with conspiracy to violate § 409 by having possession of certain of such goods knowing that they were stolen and by receiving and concealing them with intent to convert them

624

to their own use, and the second count charged the substantive offense of having such goods unlawfully in their possession, knowing the same to have been stolen. The first count of indictment 962 charged appellant McKee with unlawfully buying and receiving four cases of the cigarettes, knowing the same to have been stolen, and the second count charged McKee with possession of such goods with intent to convert them to his own use, knowing the same to have been stolen. The first count of indictment 960 charged appellants Chappell and Murphy with conspiracy to violate § 409 by having possession of such goods with knowledge that they were stolen and by receiving and concealing the same with intent to convert them to their own use, and the second count charged the unlawful possession of one case of cigarettes so stolen. The first count of indictment 961 charged appellant Murphy with buying and receiving and concealing one case of cigarettes knowing the same to have been stolen, and the second count charged Murphy with possession of the same goods, with intent to convert them to his own use. Indictment 963 charged appellant Chappell with stealing from an interstate shipment.

Indictments 959 and 960 were first called for trial in April, 1940, when separate hearings resulted in a mistrial under each indictment. Indictments 959 and 962 were thereafter consolidated and a trial thereon was had, in which the jury returned a verdict on November 16, 1940, finding Chappell guilty under the second count of indictment 959, and reporting inability to agree upon a verdict on that count as to McKee, or upon any of the other counts involved. Indictments 960, 961 and 963 were likewise consolidated and a trial was had under the combined indictments in which the jury returned a verdict on November 18, 1940, finding Murphy guilty under both counts of indictment 961, Chappell not guilty under indictment 963, and reporting inability to agree upon a verdict as to either count of indictment 960. Indictments 959 and 962 were again tried together in May, 1941, when McKee was acquitted on both counts of indictment 962, both McKee and Chappell were found guilty under the first count of indictment 959, and McKee was convicted on the second count. The subsequent trial of Chappell and Murphy in May, 1941, under indictment 960, resulted in a verdict of guilty against both under each count.

Appeal 8978 involves Murphy's conviction under indictment 961, appeal 8979 involves Murphy's and Chappell's convictions under indictment 960, and appeal 8993 involves McKee's and Chappell's convictions under indictment 959. McKee was ordered to pay a fine and sentenced to two years' imprisonment on each of the two counts of indictments 959 and 960, all sentences to run concurrently. Murphy was sentenced to serve two years upon each count of indictments 960 and 961, the sentences to run concurrently, and was fined upon each count. Chappell was sentenced to two years' imprisonment on each count of indictments 959 and 960, all sentences to run concurrently.

The cases grow out of the following facts: Upon July 26, 1937, two shipments of tobacco were received at the joint freight-house of the Louisville and Nashville Railroad and the Nashville, Chattanooga and St. Louis Railroad at Columbia, Tennessee, consigned to the A. D. Sloan Grocery Company at Columbia, Tennessee, by the American Tobacco Company of Durham, North Carolina. The shipments were checked out of the freight car on July 27, stored in the railroad warehouse, and a few days later were delivered to the consignee, which on or about July 30 found that the shipment was short seven cases of Lucky Strike cigarettes, of a total wholesale value of about $400. One case of Lucky Strike cigarettes was found in the possession of Riley Moore, a grocer of Columbia, Tennessee, who had received it from appellant Murphy, who in turn had received it from appellant Chappell. Upon being questioned Chappell at first declared that he had found the case on a highway near Murphy's house, broken open as if it had fallen from a truck, but later he stated that he had bought it from one Everett Nelson, from whom he received it around midnight on July 27, out on a country road. Chappell promised to return all the stolen cigarettes which he said he had bought for $140, and thereupon went to the home of appellant McKee and from there to a small store owned by McKee, from which he brought out four cases of Lucky Strikes. Shortly thereafter Chappell delivered to the railway police six cases of Lucky Strikes, less one small carton. The four cases were in the original shipping cartons from each of which the name and address of the consignee had been removed.

The other two cases, which had been recovered from Murphy, were in other boxes.

Both McKee and Chappell stated that on July 28, Chappell had asked McKee for a loan and McKee had given Chappell a check for $100 to be secured by four cases of cigarettes. Chappell delivered the cigarettes to McKee and helped him place them in a lunch room which McKee operated in Columbia. Chappell was a stonemason who had previously done construction work for McKee and they had been acquainted for many years. McKee admitted that he did not inquire of Chappell as to the source of the cases. The check which he gave Chappell bore on its face the word "Labor," and was cashed by Chappell on July 29.

Murphy at first stated that the case of cigarettes delivered by him to Moore had been picked up on the highway near his home, but later admitted that this was not true, and stated that, pursuant to Murphy's agreement to try to sell the cigarettes, Chappell had delivered them to Murphy's store in Columbia where he sold electrical appliances and also handled some second-hand and other goods. Murphy finally admitted that he had received not one, but three cases and that they were delivered to him at a point about a mile from his store where he had agreed to meet Chappell for the purpose of receiving them. Murphy offered a case of cigarettes in partial settlement of a bill which he owed Moore, who told him he would take them if he could sell them through the Sloan Company, as the cigarettes were not stamped and could not be disposed of by Moore in retail sale. Murphy gave Chappell a check for $50 for this case of cigarettes, but it was never cashed. Murphy denied knowing that any of the cigarettes were stolen and declared that he was at first informed that the cigarettes being searched for were stolen on July 29, and that he concluded that the Lucky Strikes in his possession were no part of the stolen lot, since he had received them from Chappell on July 28. He made no inquiry as to the source of the cigarettes, although he was well acquainted with the fact that Chappell was a stonemason. After learning that a lot of cigarettes had been stolen, he had his nephew take two of the three cases which he had received from Chappell six or seven miles out into the country, and did not reveal his possession of more than one case until after his nephew had made a statement with reference to the matter.

It was the theory of the Government that four of the cases delivered to the officers by Chappell were identical with four of those stolen, that the other boxes, with the exception of the one small carton which was not recovered, contained all of the cigarettes packed in the other three of the original cases, and that both McKee and Murphy, knowing that Chappell was a stonemason, and knowing from their business experience the market price of such cigarettes, received them with knowledge that they were stolen.

The principal legal question is presented by the contention urged on behalf of all appellants in briefs identical upon this point, that the record does not support the verdict of the jury (1) because there was no evidence that the cigarettes were stolen while still part of an interstate shipment, and (2) because those ultimately recovered were not identified as being part of the property stolen.

We think the argument that the court had no jurisdiction because the interstate shipment had ceased when the cigarettes were stolen has no merit. Appellants contend that the cigarettes were stolen from the railroad warehouse after constructive delivery to the Sloan Company, and in the alternative, that it is not shown that the cigarettes were not stolen from the Sloan Company after they were received into its actual possession. They rely upon testimony that the Sloan Company made a practice of paying freight on articles which then would be kept in the warehouse at the depot, to be taken away whenever the company desired, and also upon evidence to the effect that the Sloan Company learned of the shortage in the shipment after it was delivered to its warehouse by its own employee. It is urged that these facts establish that the cigarettes were stolen either after constructive delivery to the Sloan Company at the railroad warehouse or after it actually received the cigarettes, and hence demonstrate that the cases when stolen had ceased to be part of an interstate shipment. The court charged at length upon the necessity of proof that there had been a theft from an interstate shipment. It quoted the statute, properly defined an interstate shipment, and charged that payment of the freight would not affect the character of the cigarettes as an interstate shipment; that they would be a

part of an interstate shipment if freight charges were paid but the cigarettes left in care of the railroad as part of the shipment, but that if the cigarettes were stolen after the employee of the Sloan Company obtained them from the depot, that would not constitute theft from an interstate shipment. In view of the charge the jury must have concluded that the cigarettes were stolen from the railroad warehouse.

■■■ The charge was a correct statement of the pertinent law. Ordinarily a carrier's contract is not fulfilled until the goods are in the possession of the consignee and the general rule is that a shipment does not lose its interstate character until it arrives at its destination and is there delivered. Western Union Tel. Co. v. Foster, 247 U.S. 105, 38 S.Ct. 438, 62 L.Ed. 1006, 1 A.L.R. 1278; Danciger v. Cooley, 248 U.S. 319, 39 S.Ct. 119, 63 L. Ed. 266. Under the facts of this record the cigarettes were part of the interstate shipments throughout the time they remained at the railroad warehouse. Heymann v. Southern R. Co., 203 U.S. 270, 27 S.Ct. 104, 51 L.Ed. 178, 7 Ann.Cas. 1130; Rhodes v. Iowa, 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088.[1] The contention that the cigarettes stolen were not part of an interstate shipment presents no basis for reversal. Marifian v. United States, 8 Cir., 82 F.2d 628, certiorari denied 298 U.S. 686, 59 S.Ct. 956, 80 L.Ed. 1406. Cf. O'Kelley v. United States, 8 Cir., 116 F.2d 966.

■■■ The jury also evidently found that the cigarettes which appellants had in their possession were those stolen, and this finding is supported by convincing evidence. The facts that the cigarettes recovered were of the same brand and substantially the same in number, that the cases recovered had the addresses removed, and that the cigarettes recovered did not bear revenue stamps which are affixed by state wholesalers, clearly indicate that the two quantities of cigarettes were one and the same. The Sloan shipments were the only ones shown to have had cigarettes missing during this period, and there was no evidence that the cigarettes recovered had any other origin.

The identity of the cigarettes having been shown, there was adequate evidence that they were stolen from the warehouse. They were checked out of the freight car by the railroad clerk on the morning of July 27. The shipments which included the cigarettes were not received by the Sloan Company until July 30. During the interim they were kept under lock and key in the custody and possession of the freight agent. Seven cases were delivered to Chappell on the evening of July 27 and part of them were delivered to McKee and part to Murphy on July 28. These facts are uncontradicted. Hence the cigarettes must have been stolen while the shipments were stored in the railroad warehouse. One of the doors of the railroad warehouse was found open during this time (July 27–July 30), and the fastener was loose in such a way as to show that it had been opened from the outside, strengthening the inference that the theft was from the railroad warehouse.

■■■ Nor is there merit in the contention with reference to Chappell, McKee or Murphy that the evidence was insufficient to justify the verdicts. The circumstances of time when and place at which Chappell received the cigarettes, in the middle of the night out on a lonely country road, coupled with the absurd story which he first told, conceded by him later to have been completely false, his admitted possession, and the low price paid, constituted eminently sufficient grounds for the verdicts as to Chappell. While McKee made no contradictory statements, he was a business man of experience who handled cigarettes and placed them in vending machines. He accepted four cases of cigarettes, either for security or in a sale at a depressed price, each of the cases bearing defaced labels, and he took them from a man whom he personally knew to be a stonemason. Murphy received the cigarettes under similar suspicious circumstances, and in addition to making a false statement as to the origin of one case of cigarettes, concealed the other two cases from the police. We see no reason to disturb

---

[1] It was assumed by both appellants and the appellee, both here and in the trial court, that the Sloan Company paid the charges on this freight, but as a matter of fact the bills of lading covering these shipments and introduced in evidence show that the charges were prepaid by the shipper. This factual detail, which was given no recognition below, wholly destroys the effect of any argument based upon supposed payment of the charges by the Sloan Company prior to removal of the shipment from the warehouse.

the verdicts upon the ground of insufficiency of the evidence.

■■ A number of contentions argued in these appeals, while carefully considered, are not discussed because they were not preserved by timely and specific objection [Optner v. United States, 6 Cir., 13 F.2d 11; Miller v. United States, 6 Cir., 300 F. 529, 535, certiorari denied 266 U.S. 624, 45 S.Ct. 123, 69 L.Ed. 474], and do not present any palpable error or miscarriage of justice. Title 28, § 391, U.S.C., 28 U.S. C.A. § 391. Appellants here do not deny the truth of any of the material facts set forth in the record as to their participation in the receiving of the cigarettes. They merely deny that they knew the cigarettes were stolen. Hence much of the testimony admitted over appellants' objection related to facts not really in controversy, which, moreover, were independently proven. Thus the testimony given by a railway officer as to statements made by Chappell and one Emmett Anderson, not in the presence of Murphy and McKee, could not have been prejudicial. Since appellants do not deny that the statements were made and that the transactions took place substantially as alleged, this testimony, if erroneously admitted, was harmless. Cf. United States v. Stilson, D.C.Pa., 254 F. 120, affirmed 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154.

■ It is also urged that reversible error was committed in forcing Chappell to testify as to the McKee transaction. So far as this record shows, he testified without personal objection, and neither he nor McKee, in view of the admitted facts and the other testimony in the record, was prejudiced by Chappell's taking the stand.

■ It is urged that it was error to allow the jury to consider the second count of indictment 960, which charged Chappell with unlawful possession of one case of Lucky Strike cigarettes when he had theretofore been convicted under the second count of indictment 959 of unlawful possession of four cases of Lucky Strikes, with knowledge that they had been stolen from the interstate shipment. Assuming, but not deciding that the court erred in this regard, the error is not reversible, since the combined sentences simultaneously imposed against Chappell under indictment 960 do not exceed the penalty that could have been imposed for the offense of which he was validly convicted. Abrams

v. United States, 250 U.S. 616; Coupe v. United States, 72 App.D.C. 86, 113 F.2d 145 certiorari denied, 310 U.S. 651, 60 S.Ct. 1105, 84 L.Ed. 1417; United States v. Monarch Distributing Co., 7 Cir., 116 F.2d 11, certiorari denied, 312 U.S. 695, 61 S.Ct. 732, 85 L.Ed. 1130.

It is urged on behalf of McKee that it was error to sentence him under the second count of indictment 959 when he had been acquitted, as appellant contends, of the same charge by the same jury under the second count of indictment 962. The two counts are similar, one charging possession of four cases of Lucky Strike cigarettes with knowledge that the same were stolen from an interstate shipment, and one charging possession of four cases of Lucky Strike cigarettes with knowledge that the same were stolen from an interstate shipment and with intent to convert the same to his own use.

■ We agree with counsel for McKee that the gist of the crime charged in these two counts is the same, the possession with knowledge that the cigarettes had been stolen from an interstate shipment. The added allegation of intent to convert inserted in the second count of 962 was surplusage. Nichamin v. United States, 6 Cir., 263 F. 880. But counsel failed to move to strike the allegation of intent to convert from indictment 962, and the jury may well have found, in view of the testimony that McKee took the cigarettes as security, that he did not intend to convert them to his own use, as charged in 962, but that he had them in his possession, as charged in 959, unlawfully, with knowledge that they were stolen. Hence under this record there is no real inconsistency between the verdict of guilty under 959 and of not guilty under 962. It is the general rule that inconsistency in the verdicts upon separate counts is not fatal, each count being as it were a separate indictment, and the disposition of one count not affecting the other. Selvester v. United States, 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029; Steckler v. United States, 2 Cir., 7 F.2d 59; Dunn v. United States, 284 U.S. 390, 52 S. Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Gozner v. United States, 6 Cir., 9 F.2d 603; Philbrook v. United States, 8 Cir., 117 F.2d 632, 636, certiorari denied 313 U.S. 577, 61 S.Ct. 1097, 85 L.Ed. 1534. In cases where, as here, the inconsistency is more apparent than real, it is not ground for reversal. Cf. United States v. Pandolfi, 2

Cir., 110 F.2d 736, certiorari denied 310 U.S. 651, 60 S.Ct. 1103, 84 L.Ed. 1416; Nick v. United States, 8 Cir., 122 F.2d 660, 674, 138 A.L.R. 791, certiorari denied 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550; Boehm v. United States, 8 Cir., 123 F.2d 791, 813, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200.

It is unnecessary to consider the contention that upon the second trial of indictment 959, at which Chappell was found guilty under the substantive count, the court invaded the province of the jury by delivering a supplemental charge stating its opinion as to the strength of the evidence against him. The concurrent sentences against Chappell under indictment 959, as in 960, were imposed at the same time and do not exceed the sentence that might lawfully have been imposed under the first count. Hence error relating only to the second count of 959, assuming that it existed, does not warrant reversal under this record. Pierce v. United States, 252 U.S. 239, 252, 40 S.Ct. 205, 64 L.Ed. 542; Brooks v. United States, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407.

The judgments are affirmed.