**BIRMINGHAM, Collector of Internal Revenue, v. RUCKER'S IMPERIAL BREEDING FARM, INC., OF OTTUMWA, IOWA.**

**No. 13139.**

Circuit Court of Appeals, Eighth Circuit

Dec. 12, 1945.

Helen Goodner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Maryhelen Wigle, Sp. Assts. to the Atty. Gen., on the brief), for appellant.

Robert J. Bannister, of Des Moines, Iowa (Ivan D. Wilson, of Shenandoah, Iowa, and Stipp, Perry, Bannister, Carpenter & Ahlers, of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision is whether the appellee, a corporation exclusively engaged in operating a chicken hatchery at Ottumwa, Iowa, is entitled to a refund of social security taxes paid during the period January 1, 1940, through September 30, 1943, with respect to the wages of essential employees not engaged in the physical process of the hatching of poultry. The answer to the question depends upon the proper construction of § 1426(h) (3) of the Internal Revenue Code (as § 1426 was amended by § 606 of the Social Security Act Amendments of 1939, c. 666, 53 Stat. 1360, 1383–1387, 26 U.S.C.A.Int.Rev.Code, § 1426),[1] which defines the term "agricultural labor" as including "all services performed * * * in connection with the hatching of poultry." The District Court ruled, in substance, that the services of all of the employees of the taxpayer were essential to the operation of the hatchery and were performed "in connec-

1 "Sec. 1426. Definitions.
"When used in this subchapter—
*    *    *    *    *    *    *
"(b) Employment. The term 'employment' means any service performed prior to January 1, 1940, which was employment as defined in this section prior to such date, and any service, of whatever nature, performed after December 31, 1939, by an employee for the person employing him, irrespective of the citizenship or residence of either * * *, except—

"(1) Agricultural labor (as defined in subsection (h) of this section);
*    *    *    *    *    *    *
"(h) Agricultural labor. The term 'agricultural labor' includes all services performed—
"(1) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees,

tion with the hatching of poultry"; that the employees were therefore engaged in "agricultural labor"; and that the taxpayer was entitled to a refund of all the social security taxes which it sought to recover in this action. Judgment was entered accordingly, from which this appeal is taken.

It is conceded that if the District Court's construction of the applicable statute is correct, the judgment should be affirmed. The appellant contends, however, that services performed "in connection with the hatching of poultry" include only such services as are performed in the physical process of the incubation of the eggs, and that, if this is so, the taxpayer is entitled to recover nothing, since its claims for refund were insufficient to enable the appellant to determine what amount, if any, should be refunded on account of taxes paid with respect to wages of employees who were engaged in the actual process of incubation.

The facts are not in dispute. They are accurately stated by the appellant in his brief as follows:

"In its operations taxpayer normally hatches some three million baby chicks a year which are sold to farmers, either as day-old chicks or when six weeks or two months old. Taxpayer employs from 8 or 10 to 150 persons in connection with its business, who are engaged variously in gathering, receiving, candling and sizing eggs; performing the various necessary operations around the incubators; sorting, sexing and shipping baby chicks; tending chicks in brooderhouses; culling, sorting and grading flocks on farms from which the eggs for hatching are produced; working in the office writing and receiving orders and letters concerning orders for chicks, making out shipping tags and directions, answering the telephone, keeping books, and in executive capacities conducting and promoting the hatchery business and superintending the help therein. Each of these employees renders services in connection with the hatching of poultry necessary to the taxpayer's business, without which it could not be carried on. It is fully as necessary to the operation of taxpayer's hatchery that the orders be received and billed out and the chickens sold and removed from the hatchery as it is to put the eggs into the incubator or to take the chicks therefrom.

"Six months before bringing the instant suit, taxpayer filed timely claims for refund of social security taxes paid on its employees, stating as the basis of its claim that—'Each of the persons upon whose wages this tax was paid was performing services in connection with the hatching of poultry, necessary to the business, and without which it could not be carried on.'"

The statute here involved amended the Social Security Act, 49 Stat. 620, 643, 42 U.S.C.A. §§ 901, 1107. The Social Security Act excepted from the term "employment," "agricultural labor." Sec. 907 (c), 49 Stat. 643, and § 1107(c), 42 U.S. C.A. The term "agricultural labor" was not defined in the original Act. As was to be expected, the courts and the Bureau of Internal Revenue placed a strict con-

---

poultry, and fur-bearing animals and wild-life.

"(2) In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land or brush and other debris left by a hurricane, if the major part of such service is performed on a farm.

"(3) In connection with the production or harvesting of maple sirup or maple sugar or any commodity defined as an agricultural commodity in section 15(g) of the Agricultural Marketing Act, as amended, or in connection with the raising or harvesting of mushrooms, or *in connection with the hatching of poultry*, or in connection with the ginning of cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for supplying and storing water for farming purposes. [Italics supplied.]

"(4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

struction upon the term "agricultural labor." See Jones v. Gaylord Guernsey Farms, 10 Cir., 128 F.2d 1008; Chester C. Fosgate Co. v. United States, 5 Cir., 125 F.2d 775. In a ruling specifically directed at hatchery operations such as those conducted by the taxpayer in the instant case, the Bureau held that the "agricultural labor" exemption did not apply. S.S.T. 117, 1937-1 Internal Revenue Cum. Bull., pages 395, 396. In its ruling, the Bureau said:

"It is held that the services of the employees of the M Company, which is engaged in the business of hatching chickens, can not properly be classified as 'agricultural labor' inasmuch as such services are commercial and are not performed as an incident to ordinary farming operations. The taxing provisions of the Social Security Act are therefore applicable."

That is the situation which existed when Congress, in 1939, undertook to define the term "agricultural labor" and enacted the statute in controversy. Concededly, Congress was concerned with relieving agriculture of the social security tax burden by including in the term "agricultural labor" certain services which had been held not to be exempt, but which were considered to be in reality an integral part of farming activities. See House Rep. No. 728, 76th Cong., 1st Sess. (1939-2 Internal Revenue Cum. Bull., p. 538) and Senate Rep. No. 734, 76th Cong., 1st Sess. (1939-2 Internal Revenue Cum. Bull., p. 565).[2]

---

[2] Under the heading "Coverage", House Rep. No. 728 and Senate Rep. No. 734 (1939-2 Internal Revenue Cum. Bull., pages 543 and 570) state:

"1. Agricultural labor.—The present Act excludes 'agricultural labor' from coverage. The bill [H.R. 6635] continues the exemption of agricultural labor and defines the term so as to clarify its meaning and to extend the meaning to certain services which are an integral part of farming activities. These provisions are explained in detail in a subsequent part of this report, in connection with the definition of 'agricultural labor' as defined in section 209(1) of the bill."

In House Rep. No. 728, under the heading "Definitions" appears the following explanation (1939-2 Internal Revenue Cum. Bull., pages 552-553):

"Definition of 'agricultural labor.'—Section 209(1): The present law exempts 'agricultural labor' without defining the term. It has been difficult to delimit the application of the term with the certainty required for administration and for general understanding by employers and employees affected.

"Your committee believes that greater exactness should be given to the exception and that it should be broadened to include as 'agricultural labor' certain services not at present exempt, as such services are an integral part of farming activities. In the case of many of such services, it has been found that the incidence of the taxes falls exclusively upon the farmer, a factor which, in numerous instances, has resulted in the establishment of competitive advantages on the part of large farm operators to the detriment of the smaller ones.

"Paragraph (1) of this subsection exempts service performed on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, feeding, and management of live stock, bees, poultry, and fur-bearing animals. Such services are exempt under existing law only if performed in the employ of the owner or tenant of the farm on which they are rendered. Services performed on a farm in connection with the raising, feeding, and management of fur-bearing animals, such as foxes, not now exempted, will be exempt under paragraph (1). This paragraph also continues the existing exclusion of services performed on a farm in the raising or harvesting of horticultural commodities, including flowers and nursery products, such as young fruit trees, ornamental plants, and shrubs.

"Paragraph (2) of the subsection excepts services in the employ of the owner (whether or not such owner is in possession) or tenant of a farm in connection with the operation, management, or maintenance of such farm, if the major part of those services are performed on a farm. Under this language certain services are to be regarded as agricultural even though they are not performed in conducting any of the operations referred to in paragraph (1). Services performed in connection with the 'operation, management, or maintenance' of a farm may include, for example, services performed by carpenters, painters, farm supervisors, irrigation engineers, bookkeepers, and other skilled or semiskilled workers whose services contribute in any way to the proper conduct of the farm or farms operated by their employer. Some of these services at present constitute covered employment under some circumstances but not under other circumstances. It is stipu-

It seems clear that Congress, in defining "agricultural labor," used the broad language "services performed * * * in connection with the hatching of poultry" advisedly [3] and in the realization that the burden of taxes imposed upon hatcheries which procured their eggs from farmers and sold their chicks to farmers would have to be borne by agriculture. If Congress had intended that agriculture should be relieved of this tax burden only to the extent of the taxes upon wages paid to those rendering services in the incubation of eggs, it would, we think, have selected appropriate language to express that intent.

■ The appellant invokes the rule of strict construction to support the Bureau's interpretation of the statute. The rule requiring that a statute be strictly construed is not violated by allowing the statutory language to have its full meaning when that supports the policy and purposes of the statute. Donnelley v. United States, 276 U.S. 505, 512, 48 S.Ct. 400, 72 L.Ed. 676; Wilson v. United States, 8 Cir., 77 F.2d 236, 239, 240. In Danciger v. Cooley, 248 U.S. 319, 327, 39 S.Ct. 119, 122, 63 L. Ed. 266, the Supreme Court said:

"To be within the statute it is essential that the act of collecting the purchase price be done 'in connection with the transportation of' the liquor. The statute does not say 'in the transportation,' but 'in connection with' it. * * * What Cooley did, while not part of the transportation, was closely connected with it."

■ This language was used with respect to a penal statute calling for a strict construction. In the case at bar, it seems obvious that services essential to the operation of the hatchery, although not performed in the incubation of the eggs, were so essential to and so closely connected with the hatching of poultry as to constitute "services performed * * * in connection with the hatching of poultry." See and compare Walling v. Rocklin, 8 Cir., 132 F.2d 3, 6, and Miller Hatcheries, Inc. v. Boyer, 8 Cir., 131 F.2d 283.

■ This is not a case in which the plain language of a statute produces absurd or futile results or is clearly at variance with the policy of the legislation. The statutory language is therefore the most persuasive evidence of the legislative intent. United States v. American Truck-

---

lated that the services referred to in this paragraph must be performed in the employ of the owner or tenant of the farm so that the exemption will not extend to services performed by such persons as employees of a commercial painting concern, for example, which contracts with a farmer to renovate his farm properties.

"Paragraph (3) extends the exception to services performed in connection with certain specified products and operations. Ordinarily these services are performed on a farm or are of such a character as to warrant no different treatment than is accorded services performed in connection with farming activities. In order that a uniform rule may be applied in the case of these services, they will be excepted whether or not performed on a farm or in the employ of the owner or tenant of a farm. In the case of maple sap, the exemption will extend to services in connection with the processing of the sap into maple sugar or maple sirup, but not in the subsequent blending or other processing of such sugar or sirup with other products. Under the present exception services performed in connection with the production of maple sirup or maple sugar do not constitute 'agricultural labor.' * * * Services performed in connection with any hatching of poultry and in connection

with the ginning of cotton will also be excepted. Services performed in connection with the raising or harvesting of mushrooms constitute 'agricultural labor' under existing law, only when performed on a farm. The fact that mushrooms are not usually grown under ordinary field conditions but are grown in cellars, caves, barns, or in sheds specially constructed for the purpose has resulted in the employees of some growers being covered while employees of others are not. Under this paragraph all such services will be excepted."

[3] That Congress understood the effect of using the words "in connection with" is indicated by the following excerpt from the report of the House Committee of conference on H.R. 6635 (House Report No. 1461, 76th Cong., 1st Sess.; Internal Revenue Cum. Bull. 1939–2, 593, 595):

"Amendments Nos. 57 and 58: The House bill defined agricultural labor to include all services performed on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity. These Senate amendments struck out the words 'connection with.' The conference action restores such words; and the Senate recedes."

ing Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345. Statutes are not to be nullified where unambiguous language calls for a logical and sensible result. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195.

We have not overlooked the contentions of the appellant that the District Court's construction of the statutory language is out of line with the Bureau of Internal Revenue's interpretation of the meaning of the words "services performed * * * in connection with the ginning of cotton," and with the opinion of the State District Court of Wapello County, Iowa, holding that executives and office employees of the taxpayer were not performing "agricultural labor" within the meaning of the Iowa Unemployment Compensation Act, which contains the same definition of "agricultural labor" as is here involved. Since we are of the opinion that the construction placed upon the statute by the trial court is in harmony with the intent of Congress and the plain meaning of the statutory language, it is unnecessary to discuss these contentions.

The judgment appealed from is affirmed.