**AMMON et al. v. BOWLES, Adm'r, OPA.**

**No. 13218.**

Circuit Court of Appeals, Eighth Circuit.

April 17, 1946.

Rehearing Denied May 9, 1946

Lloyd J. Marti, of Lincoln, Neb. (Ernest B. Perry and Robert Van Pelt, both of Lincoln, Neb., on the brief), for appellants.

Abraham H. Maller, Sp. Appellate Atty., OPA, of Washington, D. C. (George Moncharsh, Deputy Adm'r for Enforcement, OPA, Milton Klein, Director, Litigation Div., OPA, and David London, Chief, Appellate Branch, OPA, all of Washington, D. C., and Amos J. Coffman, Regional Atty., OPA, George E. Leonard, Regional Litigation Atty., OPA, and Jacob Cohen, Atty., OPA, all of Chicago, Ill., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This action was brought by the Administrator, Office of Price Administration, under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 901 et seq., against the defendants for an injunction and treble damages. The complaint charged that the defendants had, in November, 1943, and thereafter, sold gasoline engines, of defendants' manufacture, at prices in excess of those fixed by Maximum Price Regulation No. 136 (7 F.R. 5047), as amended (8 F.R. 2270), relating to "Machines and Parts, and Machinery Services." In their answer, the defendants admitted that, during the times referred to, they had sold gasoline engines at prices in excess of those fixed by Maximum Price Regulation No. 136, as amended, but denied the applicability of that regulation to the engines sold. The defendants alleged "that said engines are light, portable engines which weigh from 75 to 245 lbs.; that said engines are manufactured, sold and used as portable engines; that said engines are sold principally for farm use and at least 80% of them go on farm equipment or for direct farm use and said engines are used primarily in connection with the production and farm processing for market and farm use of agricultural products," and "are farm equipment or an item of farm equipment," the sale of which is subject to Maximum Price Regulation No. 246 (7 F.R. 8587), relating to "Farm Equipment," and that defendants had conformed to that regulation in pricing their engines. The defendants further alleged that if they had violated Maximum Price Regulation No. 136, as amended, the violation was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.

The issues made by the pleadings were: (1) Did Maximum Price Regulation No. 136, as amended, establish maximum prices

for the engines in suit? (2) Did Maximum Price Regulation No. 246 govern the prices for such engines? (3) If the defendants violated Maximum Price Regulation No. 136, was the violation wilful or the result of a failure to take practicable precautions?

The issues were tried to the court. Most of the facts were stipulated or were undisputed. It was agreed that $11,860.16 was the amount by which the sales price of the engines sold by the defendants since November 18, 1943, exceeded the maximum prices established by Maximum Price Regulation No. 136, as amended. It was conceded that if that regulation was not controlling, the prices charged by the defendants were lawful. The District Court resolved all of the issues in favor of the Price Administrator, and the defendants have appealed. The opinion of the District Court is reported in 61 F.Supp. 106. It states in detail the facts, and discusses every issue of fact and law raised at the trial. It would be useless for this Court to cover the same ground.

The engines in suit were, as the defendants alleged, light, portable engines, at least 80% of which were sold for use on farm equipment or for farm use, and were so used. The defendants contended that Maximum Price Regulation No. 136, as amended, covering "gasoline * * * engines for marine, tractor, railway, and stationary use," did not include engines such as those in suit; that an engine "for stationary use" is a heavy-duty engine intended for use in a fixed location and on a permanent base, and is not a light, portable engine which can readily be moved from one place to another and put to various uses as a source of power. The District Court was of the opinion that the portable engines in suit, which are stationary while in use and are capable of being used permanently in a fixed location, are engines "for stationary use." We find it unnecessary to decide whether this construction of Maximum Price Regulation No. 136, as amended, is correct.

If Maximum Price Regulation No. 246 was applicable, as the defendants contend, the judgment in favor of the Administrator cannot be sustained.

The main problem presented is accurately stated by the District Court as follows (61 F.Supp. 106, 111, 112):

"The defendants' chief contention is that their three engines are covered by MPR 246, governing 'Manufacturers and Wholesale Prices for Farm Equipment' whose controlling price date is March 31, 1942, instead of October 1, 1941, the base date if they are governed by MPR 136, as amended. Their prices had been raised in the interval between the two dates. Upon that point the question is whether their engines are within the definition of the coverage in MPR 246, for if they were that act would be operative under the terms of both MPR 136, as amended, and MPR 246.[7]

"Under MPR 246, section 1361.66, subsection (4), 'Farm equipment' is defined as, and said to mean: 'Any mechanical equipment, attachment or part used primarily in connection with the production and farm processing for market and farm use of agricultural products, but does not include automobiles, trucks, general purpose tools, hand tools, building material, electrical equipment (except fence controllers), sprays or other chemicals, commercial processing machinery, livestock, seeds, feeds or other agricultural product.' Subsection (5) of the same section defines 'item of farm equipment' as 'any item of complete farm equipment, any attachment for use therewith and any part thereof, whether in a finished or unfinished state, which is covered by this Maximum Price Regulation No. 246', and then refers to the following paragraph of the regulation for the definition of its coverage. The following section, 1361.67, in its subsection (a) provides: 'Except as set forth in paragraph (b) of this section this Maximum Price Regulation No. 246 applies to any item of complete farm equipment, any

"[Footnote.] [7] It should be observed that by MPR 136, as amended, section 1390.-2, title, Exclusions, it is provided that: 'This regulation shall not apply to (a) any sale or delivery of a machine or part * * * for which a maximum price is established by any other regulation or order issued by the Office of Price Administration'; and that MPR 246, section 1361.67, provides in part, that: 'In any case of conflict it (i. e. MPR 246) supersedes the following maximum price regulations: Maximum Price Regulation No. 136—Machines and Parts and Machinery Services.' [End of footnote.]

attachment for use therewith and any part thereof whether in a finished or unfinished state. .* * *' The subsection or paragraph (b) just noted, deals with exclusions 'from coverage, and its first item is 'any unfinished product in such form as to be used for other purposes as well as for farm equipment.' "

The District Court, in its opinion, then observes that: " * * * the purpose of MPR 246 is manifestly to cover sales in their complete form of products 'used primarily in the production and farm processing for market and farm use of agricultural products', and parts therefor only when they are directly designed for that purpose. Both the affirmative and the negative clauses above quoted, and a suggestive but nonexclusive list of farm equipment embodied in its section 1361.66, subsection (4) compel that conclusion. Unless, therefore, the primary use of engines of the types and sizes here involved is the production and farm processing for market and farm use of agricultural products, their coverage under MPR 246 must be denied."

■ Are portable gasoline engines, the principal ultimate use of which is as a source of power to operate various mechanical devices on farms, "farm equipment" within the meaning of Maximum Price Regulation 246? Such engines would seem to be covered by that regulation if they are (1) mechanical equipment (2) used primarily *in connection with* the production and farm processing for market and farm use of agricultural products. That such engines are mechanical equipment is, of course, obvious. Their most important use is as a source of power on farms, which are, after all, operated for the purpose of producing and processing agricultural products for market. Since the farm use of this mechanical equipment stands first in order, rank or importance, it is a primary use. The engines, while they are not used directly "in the production and farm processing for market and farm use of agricultural products," as the District Court pointed out, are, we think, used "in connection with" such production and processing. See and compare, Birmingham v. Rucker's Imperial Breeding Farm, 8 Cir., 152 F.2d 837, 840.

The contention that the coverage of Maximum Price Regulation No. 246 is broad enough to include these engines finds support in the exception from coverage of "automobiles, trucks, general purpose tools, hand tools," etc. If the Price Administrator intended that the Regulation should cover only mechanical equipment used "in", instead of "in connection with", the actual production and processing of agricultural products, it should have been unnecessary to except automobiles, trucks, general purpose and hand tools, and other items of farm equipment which are not ordinarily used "in" the production and processing of agricultural products, although they are used "in connection with" such production and processing.

■ Regulations such as those here involved are intended for the guidance of ordinary business men and manufacturers, who may, we think, justifiably assume that the regulations mean what their language, taken and understood in its usual sense, imports.

Our conclusion is that the language of Maximum Price Regulation No. 246 is too broad to permit of the narrow construction accorded to it by the District Court, and that if the Price Administrator's intention was to exclude from the coverage of that Maximum Price Regulation engines of the type made and sold by the defendants, primarily for use on farms, he failed to express that intention adequately.

The judgment appealed from is reversed, and the case is remanded with directions to dismiss the complaint of the Administrator.

WOODROUGH, Circuit Judge (concurring).

In addition to the reasons given for reversal herein (in which I concur), it also appears to me that the appellants should be sustained in their contention that the Regulation M.P.R. No. 136 ought not to be construed to cover the little engines they made to be wheeled or carried about by hand. The designations of the Regulation "engines for marine, tractor, railway, and stationary use" seem to me to exclude appellants' little engines. No one claims they were stationary engines and I think that the natural understanding of the ordinary reader to whom the Regulation is directed would be that it was intended to cover stationary engines built for use as such; that is, to be affixed to

solid foundations in place and not to be wheeled or carried about by hand. The trial court has demonstarted that it is possible without doing violence to logical ratiocination, to make a distinction between stationary engines and engines for stationary use, and to conclude from the study of the wording that the little engines are for stationary use and so within the Regulation. But the reasoning processes of the logomachy seem to be carried beyond common practice in business. As I have been unable to picture any engine (that is, a machine for converting a physical force into mechanical power) that is not, while in operation, stationary in respect to something, it seems to me the reasoning leads to the conclusion that the designation "engines for stationary use" might include all engines. That such was not the intention seems obvious to me. But conceding, as I must in view of the trial court's demonstration that the wording of the Regulation is capable of other meaning than the one I get from reading it in the scant light of the record, I think a clarification of the Regulation rather than the imposition of damages, single or treble, was called for.