GRIFO, J.,
— On December 10, 1970, defendant was the operator of an International truck-tractor bearing current New Jersey registration plate no. XZ4943, and Strick trailer bearing current Massachusetts license plate no. T1592. The truck was owned by the M & M Transportation Company and operated by defendant. It left the terminal of M & M Transportation Company, located approximately two miles north of Route 22 on Route 191, and proceeded south on Route 191 when it suffered mechanical difficulties and was parked at the side of Route 191. Trooper John L. Hlivia, of the Bethlehem State Police barracks, saw the disabled truck and trailer, stopped to offer *721 assistance to defendant and, in the process of offering assistance, checked the registration of the truck and trailer. Defendant was arrested for violation of section 401(a) of The Vehicle Code as a result of the investigation.
The truck was loaded with goods destined for points in eastern Pennsylvania and were shipped from surrounding States. The goods on the truck were originally picked up from their out-of-State points of origin, delivered to the terminal of the M & M Transportation Company, placed on tractor-trailer trucks known in the trucking business as “road trucks,” which, in turn, delivered the goods to the M & M Transportation Company terminal outside of Easton, Pa., located on Route 191. From there, the goods were reloaded on the truck in question and were in the process of being delivered to their points of destination when the arrest occurred.
While defendant has been cited for violation of section 401(a) of The Vehicle Code (section 75 PS §401(a)), which provides:
“Except as hereinafter provided, no motor vehicle, tractor, trailer or semi-trailer shall be operated upon any highway of this Commonwealth until such vehicle or tractor shall have been properly registered with the department, as hereinafter provided, and the registration plate or plates that have been issued for a vehicle or tractor for the current year are received and displayed as required by this act, and no such vehicle . . . shall be registered until a certificate of title has been obtained therefor.” it is the position of defendant that the vehicle falls within the exemption provided for in section 401(d) of The Vehicle Code, 75 PS §401(d).
“Except as hereinafter provided, every nonresident, including any foreign corporation carrying on business within this Commonwealth and owning and *722 regularly operating in such business any motor vehicle, trailer or semi-trailer, within this Commonwealth, unless exempted from registration under the terms of a reciprocity agreement, shall be required to register each such vehicle and pay the same fee therefor as is required with reference to like vehicles owned by residents of this Commonwealth.”
Defendant contends that the vehicle he was operating is exempt from registration in Pennsylvania under the terms of reciprocity agreements with New Jersey and Massachusetts.
Defendant has presented testimony as to the nature of the reciprocity agreements between New Jersey and Massachusetts. A summation of both these agreements is that if a foreign vehicle operating solely in interstate commerce within the Commonwealth is properly registered in the foreign State, i. e., Massachusetts or New Jersey, then the registration requirements of section 401 of The Vehicle Code have been met.
The factual question for this court to determine is whether the vehicle was engaged in interstate commerce.
The M & M Transportation Company has terminals in Massachusetts, Rhode Island, Connecticut, New York, New Jersey and Pennsylvania. If, for example, goods are to be shipped from Boston, Mass., to Allentown, Pa., by M & M Transportation Company, these goods are shipped in the following manner: A truck from the M & M Transportation Company stationed at their Boston terminal picks up the goods at their point of origin in Boston and delivers the same to the Boston terminal. There, the goods, together with other shipments destined for eastern Pennsylvania are loaded onto a truck and delivered to the Easton ter *723 minal. At the Easton terminal, they then are unloaded, sorted and reloaded on trucks which take the same from the Easton terminal to Allentown. Cargo originating in Pennsylvania and destined for points outside of Pennsylvania are shipped in the same manner. The shipping process involved is a three-step procedure.
As a result of the arrest of defendant, it is apparent that only the shipments from terminal to terminal are considered by the Commonwealth as being shipments of interstate commerce. Once the goods are reloaded at the Easton terminal and delivered to points located in Pennsylvania, the Commonwealth treats these shipments as intrastate commerce. The Commonwealth asserts that the trucks making the deliveries do not enjoy the benefit of the reciprocity agreements as set forth in section 401(d) of The Vehicle Code.
The Supreme Court of the United States in the case of U. S. et al. v. Erie R. R. Co. et al., 280 U. S. 98, (1929), 50 S. Ct. 51, 74 L. Ed. 187, sets forth the test to determine whether shipments are inter or intrastate commerce, which is still the law today. The case was an appeal of the Erie Railroad Company from a district court decree enjoining the enforcement of a rate-fixing order of the ICC. The shipments of wood-pulp from Europe arrived at the harbor in Hoboken, N. J., where it was placed upon the cars of the Erie Railroad Company and transported to Garfield, N. J., the point of destination. The question for the Supreme Court to decide was whether the shipment of the Erie Railroad Company from Hoboken, N. J., to Garfield, N. J., was interstate commerce. In applying its test as to what is to be considered interstate commerce, the court stated:
*724 “It is determined by the essential character of the commerce”:
and stressed the findings of fact of the ICC:
“[T]hat from the time the pulp is placed aboard the steamer [at a foreign port], there is a continuing intent on the part of the shipper that it should be transported to Garfield.”
The decision was that the shipment by Erie Railroad from Hoboken to Garfield was interstate commerce and subject to the rate-fixing order of ICC.
The test of the Erie case has been used by the Federal courts as late as 1969: Farmers Union Cooperative Marketing Assn. v. State Corporation Commission of Kansas, 302 F. Supp. 778 (1969). On page 783, the court, in determining whether a shipment was intra or interstate commerce, stated:
“Therefore, in determining the nature of a shipment, it is the essential character of the commerce that is decisive. The intent of the parties formed at the time of the initial movement is indicative of this essential character.”
It is absurd to think that, in the case before this court, it was the intent of the shipper, M & M Transportation Company, that the final destination should be its Easton terminal. The M & M Transportation Company is paid for shipping goods from the point of origin or pick up to the point of destination or delivery. It is not paid for shipments from terminal to terminal, nor does the person requesting M & M to make the shipments expect the goods to come to rest at Easton or any other terminal, but rather to be delivered to the location he designates.
The case before this court can easily be distinguished from the case of Brosious v. Pepsi-Cola Co., et al., 155 F. 2d 99 (Third Circuit, 1946), in which the court held that when the shipment from New *725 York of Pepsi syrup reached the distributor in Pennsylvania, the interstate nature of the commerce terminated, because once in Pennsylvania, the syrup was processed and bottled as Pepsi-Cola soft drink. In reaching its decision, the third circuit court of appeals stated:
“It has been stated that interstate commerce terminates at a point where the parties concerned intended that it should end, i. e., it ceases at the point of its destination and has been delivered to the consignee. See Danciger v. Cooley, 1919, 248 U. S. 319, 39 S. Ct. 119, 63 L. Ed. 266; Binderup v. Pathe Exch., 1923, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308.”
The same proposition has been cited in Pace Mfg. Co. v. Milliken et al., 70 F. Supp. 740 (1947).
It is apparent from the testimony that the intent of the parties was for M & M Transportation Company to deliver the goods not to the Easton terminal, but to their final destination in eastern Pennsylvania, delivering the same to the consignees and, therefore, the entire movement of goods at point of pick up and at the point of delivery are shipments of goods in interstate commerce.
While the Commonwealth arbitrarily terminated the interstate nature of M & M Transportation’s business when shipments reach a Pennsylvania terminal, the courts have not accepted this reasoning. In fact, where goods are shipped out of State and the journey requires the services of several shippers, the whole journey has been treated as interstate commerce even though some shippers never cross State lines. In Kach v. Monessen Southwestern Railway Company, 151 F. 2d 400, the court held that in the case of a railroad which takes part with other carriers with the movement of a consignment of freight which passes across a State line at some point in its journey, it is engaged *726 in interstate commerce even though the railroad itself does not transport freight across the State line.
“The fact that the defendant railroad does not itself transport consignments of freight across state lines does not place it beyond the reach of the federal power under the commerce clause of the Constitution. Constitution art. 1, §8, cl. 3. If it takes part with other carriers in the continuous movement of a consignment of freight which passes across a state line at some point in its journey between the place of origin and the place of destination it becomes a participant in interstate commerce and, therefore, subject to the power of Congress under the commerce clause of the Constitution.”
Also, in Walling v. McCrady Construction Co., 60 Fed. Supp. 243, the court held that a switching railroad operated solely in Pennsylvania and delivering a substantial part of goods which originated out of state, or which were destined for locations out of state, was engaged in interstate commerce.
While the defendant’s employer, M & M Transportation Company, used three separate operations to transport freight, each one of these steps: the picking up of goods and delivery to a terminal, the shipment from terminal to terminal, and the delivery from the terminal to point of destination, are all interstate commerce. Therefore, the reciprocity agreement entered into between the Commonwealth of Pennsylvania and the States of New Jersey and Massachusetts are applicable to the truck and trailer the defendant was driving at the time of his arrest.
Accordingly, the court enters the following
ORDER
And now, June 14, 1971, the appeal of defendant is granted, and defendant is adjudged not guilty. The clerk is directed to return any funds deposited for fine and costs.