**PERKO et al. v. UNITED STATES.**

No. 14740.

United States Court of Appeals
Eighth Circuit.

May 25, 1953.

Edward L. Boyle, Duluth, Minn. (Fryberger, Fulton & Boyle, Duluth, Minn., on the brief), for appellants.

Thomas L. McKevitt, Attorney, Department of Justice, Washington, D. C. (J. Edward Williams, Acting Asst. Atty. Gen., Philip Neville, U. S. Atty., and William W. Essling, Asst. U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge. .

This is an appeal from a judgment enjoining the defendants from violating the provisions of an airspace reservation created by Executive Order of the President of the United States No. 10092, dated December 17, 1949, 14 F.R. 7637, U.S.Code Cong. Service, 1950, p. 1567, applying to the "roadless area" of the Superior National Forest in northern Minnesota.

The pertinent provisions of the Order read:

"1. The airspace below the altitude of 4,000 feet above sea level over the following-described areas in the counties of Cook, Lake, and St. Louis, State of Minnesota, is hereby reserved and set apart as an airspace reservation:

"Those areas of land and water within the exterior boundaries of the Superior National Forest which have heretofore been designated by the Secretary of Agriculture as the Superior Roadless Area, the Little Indian Sioux Roadless Area, and the Caribou Roadless Area, respectively, and which are more particularly described as follows: * * *.

"2. After January 1, 1951, no person shall navigate an aircraft within this airspace reservation except in conformity with the provisions of this order and as permitted by or under the authority of regulations prescribed by the Secretary of Agriculture.

"3. Aircraft may be navigated within this airspace reservation when necessary for any of the following-described purposes:

"(a) Making an emergency landing.

"(b) Navigating when low-level flight is necessary for safety.

"(c) Conducting or assisting in the conduct of official business of the United States, the State of Minnesota, or of Cook, St. Louis, or Lake County, Minnesota.

"(d) Conducting rescue operations.

"4. Subject to general regulations of the Secretary of Agriculture, aircraft may be navigated within this airspace reservation until January 1, 1952, for the purpose of direct travel to and from underlying private lands; provided that air travel was a customary means of ingress to and egress from such lands prior to the date of this order.

"5. The Secretary of Agriculture shall carry out the provisions of this order, and for such purpose he is authorized to prescribe appropriate regulations.

"6. Any person navigating an aircraft within this airspace reservation in violation of the provisions of this order will be subject to the penalties prescribed by the Civil Aeronautics Act of 1938 (52 Stat. 973), as amended."

The defendants Perko, Skala and Zupancich are private owners of land in the roadless area where they operate resorts on lakes on the border between the United States and Canada in the area covered by the airban. Defendant West is in the commercial aviation business at Ely, Minnesota, and he serves the resorts of the other defendants with air service.

Prior to 1905 national forests were under the jurisdiction of the Secretary of the Interior. By the Act of February 1, 1905, 33 Stat. 628, management of the forest reservations was transferred to the Secretary of Agriculture. In the establishment of roadless areas the Secretary acted under 16 U.S. C.A. § 551, which reads:

"The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title, and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; * * *."

The Superior National Forest is located in northern Minnesota. It was created by presidential proclamation in 1909. 35 Stat. 2223. It borders on the boundary waters between the United States and Canada. Canada has established a national park to the north of a part of it.

By the terms of the airban proclamation involved here, issued December 17, 1949, air travel was permitted until January 1, 1952, "for the purpose of direct travel to and from underlying private lands; provided that air travel was a customary means of ingress to and egress from such lands prior to the date of this order."

The court found, and it is not disputed, that the defendants have repeatedly violated the order in question.

The defendants' first contention is that the President, under § 4 of the Air Commerce Act of 1926, has authority only to set apart airspace reservations for "national defense" and "public safety purposes" in the District of Columbia, and none other, and that, therefore, Executive Order No. 10092 is not a valid or enforceable order.

Section 4, 49 U.S.C.A. § 174, of the Act reads:

"§ 174. *Airspace reservations*

"The President is authorized to provide by Executive order for the setting apart and the protection of airspace reservations in the United States *for national defense* or *other governmental purposes* and, *in addition,* in the District of Columbia for *public safety purposes.* The several States may set apart and provide for the protection of necessary airspace reservations in addition to and not in conflict either with airspace reservations established by the President under this section or with any civil or military airway designated under the provisions of sections 171, 174–177, and 179–184 of this title. May 20, 1926, c. 344, § 4, 44 Stat. 570." (Italics supplied.)

The contention here is that by application of the rule of *ejusdem generis* the President's powers under § 4 is limited to the creation of airspace reservations for *national defense* or for *public safety* in the

District of Columbia, and that the words "or other governmental purposes" are without meaning. The rule of ejusdem generis is defined in 50 Am.Jur., Statutes, § 249, as " * * * where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designation and as including only things or persons of the same kind, class, character, or nature as those specifically enumerated." However, the text proceeds: § 250. "The rule of ejusdem generis is far from being one of universal application. It is neither final nor conclusive * * * The doctrine * * * is but a rule of construction to aid in ascertaining and giving effect to the legislative intent, where there is uncertainty, and does not warrant the court in subverting or defeating the legislative will by confining the operation of a statute within narrower limits than intended by the lawmakers * * *. Moreover, where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all."

■■ Since the Superior National Forest is not in the District of Columbia the words "for public safety purposes" in that territory have no application to the question presented. Moreover, the words "for national defense" embrace all the objects to which it applies and, therefore, the argument renders the words "or other governmental purposes" meaningless. The court should not so construe the statute. The language of the Act shows that it was intended to protect the National Forest for the purposes for which it was created. United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598; Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522; Helvering, Commissioner, v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S. Ct. 50, 79 L.Ed. 211; Prussian v. United States, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed.

610; Danciger v. Cooley, 248 U.S. 319, 39 S.Ct. 119, 63 L.Ed. 266.

■ The defendants next contend that Executive Order No. 10092 is not a valid and enforceable order because it does not state the purpose for which an airspace reservation was set apart in the roadless area of the forest.

In answer to a pretrial interrogatory of defendant Skala the government answered: "Specific governmental purposes served by the airspace reservation is the preservation of the wilderness character of the Roadless Area in the Superior National Forest and to aid in the general administration of such area."

Further, in Thompson v. Consolidated Gas Utilities Corp., 300 U.S. 55, 69, 57 S. Ct. 364, 371, 81 L.Ed. 510, the Supreme Court say: "It is settled that to all administrative regulations purporting to be made under authority legally delegated there attaches a presumption of the existence of facts justifying the specific exercise." The executive order here involved begins as follows: "By virtue of the authority vested in me by section 4 of the Air Commerce Act of 1926 (44 Stat. 570; 49 U.S.C.A. § 174), and as President of the United States, it is ordered as follows: * * *." The order, therefore, expressly cites the source of the authority delegated to the President. There is no basis for this complaint. See, also, Pacific States Box & Basket Co. v. White, 296 U.S. 176, 185, 56 S.Ct. 159, 80 L.Ed. 138.

■ Defendants' third, fourth and fifth contentions are (1) that if the Air Commerce Act of 1926 can be read to give to the President authority to set apart an airspace reservation for any and every governmental purpose, it is unconstitutional as an unlawful delegation of the power vested only in the congress; (2) it is unconstitutional because it deprives the defendants of their property without due process of law, and takes their property for public use without just compensation; and (3) it is unconstitutional as an interference with and an attempt to regulate intrastate commerce.

These contentions may be discussed together. By the act of May 20, 1926, as amended by the Act of June 23, 1938, 49 U.S.C.A. § 176:

"The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace above the United States, * * *." The Supreme Court in United States v. Causby, 328 U.S. 256, 260, 66 S.Ct. 1062, 1065, 90 L.Ed. 1206, said: "It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—*Cujus est solum ejus est usque ad coelum.* But that doctrine has no place in the modern world. The air is a public highway, as Congress has declared."

■ Since it is the law that such administrative regulations as those in question here are presumed to rest on facts justifying the specific exercise we need not discuss the subject at length. See Thompson v. Consolidated Gas Utilities Corp., supra, and Bailey v. Holland, 4 Cir., 126 F.2d 317, 322, and cases cited therein, and United States v. Commodore Park, Inc., 324 U.S. 386, 65 S.Ct. 803, 89 L.Ed. 1017.

■ Since the purpose of the suit in this instance was to enjoin actions of the defendants which interfered with the operation and management of a national forest reservation, injunction was the proper and appropriate remedy. Light v. United States, 220 U.S. 523, 538, 31 S.Ct. 485, 55 L.Ed. 570; In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092; Robbins v. United States, 8 Cir., 284 F. 39, 46.

■ The sixth contention of the defendants is that the enforcement of the Executive Order No. 10092 will take from defendants the right to the free and open use of the water communications between the United States and Canada as defined by the Webster-Ashburton Treaty of August 9, 1842, 8 Stat. 572. Article 2 of the Treaty relied upon reads:

"It being understood that all the water communications and all the usual portages along the line from Lake Superior to the Lake of the Woods, and also Grand Portage from the shore of Lake Superior to the Pigeon river, as now actually used, shall be free and open to the use of the citizens and subjects of both countries."

The contention is that the defendants as citizens of the United States are by this provision of the treaty guaranteed the right to land and take off by aircraft upon these waters, and that this right can be taken from them only by an amendment to the treaty. No authority is cited in support of this argument, and we know of none. We do not think the treaty deprives either the United States or the Dominion of Canada of jurisdiction over its own citizens. If either government undertook to impose unilateral restrictions upon citizens of the other a problem might be presented for settlement between the two countries by amendment to the treaty or by any other applicable means, such as by the International Joint Commission created by the Treaty of January 11, 1909, 36 Stat. 2448, for the purpose of settling frontier questions arising between them. The treaty places no restrictions on the power of either government in dealing with its own citizens.

The defendants present six further contentions in their brief. In their reply brief they say that the trial court and the government ignore these contentions, which are: "VII. Criminal Jurisdiction; VIII. Criminal Jurisdiction on state and private lands; IX. Suit to enjoin criminal offense; X. Trial by jury; XI. Civil Aeronautics Act of Minnesota; XII. No way of ingress to or egress from, * * *."

We cannot speak for the trial court nor for the government; but, speaking for ourselves, we do not think it necessary to discuss these topics in this case. This is not a criminal case nor an action at law. Neither is it a suit to enjoin a criminal offense. This is a normal suit in equity for an injunction. In such a case the parties are not entitled as a matter of right to a jury trial. Neither does the Civil Aeronautics Act of Minnesota affect the rights of the parties involved in the issues in this suit. Finally, the injunction granted here affects only the defendants' rights to ways

of ingress to and egress from their properties by air. It no doubt injures the value of their properties for resort purposes; but that question is not involved in this case except indirectly. The court considered and decided all the pertinent and relevant contentions of the parties hereto in the issues presented. Nothing worthwhile is achieved by injection of irrelevant arguments into a case in equity nor by the consideration of such matters by the court.

The court's decision was right and the judgment is affirmed.