Joseph PERKO and William Zupancich, Plaintiffs,

v.

NORTHWEST PAPER COMPANY, Inc., and Galen W. Pike, Defendants.

Civ. No. 1519.

United States District Court
D. Minnesota, Fifth Division.

May 13, 1955.

William W. Essling, of St. Paul, Minn., for plaintiffs.

Harry C. Applequist and Dancer, Montague, Applequist, Lyons, Nolan & Nordine, Duluth, Minn., for Northwest Paper Co.

Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., for defendant Galen W. Pike.

NORDBYE, Chief Judge.

This matter comes before the Court on plaintiffs' motion for a temporary injunction restraining and prohibiting defendants during the pendency of this action from in any manner preventing plaintiffs from crossing the lands of the United States in traveling to and from plaintiffs' property within the Superior National Forest by motor vehicle, boat, and canoe, operated upon the Gun Lake Road and the lakes, streams and portage trails connecting Gun Lake and Crooked Lake within the Superior National Forest.

Plaintiffs are the fee owners of certain properties located on Crooked Lake, and which are located in part upon international boundary waters between the United States and Canada. The business enterprises of plaintiffs in these properties are summer vacation resorts and fishing camps. The dispute here arises as to the right of plaintiffs to use the so-called Gun Lake Road as means of partial ingress and egress to their properties. The use of waterways by boat or canoe is not involved. The defendant Pike is an employee of the United States and is supervisor of the Superior National Forest. The Northwest Paper Company is the owner of certain lands in the area and it uses the road in question in the operation of its holdings and in removing timber from its properties. Plaintiffs seek a judgment declaring their rights to this road and an injunction, temporary and permanent, against the acts of the defendants.

The so-called Gun Lake Road had its genesis in certain railroads and logging roads operated by the Duluth, Missabe and Iron Range Railway, hereinafter referred to as the Missabe, the Northwest Paper Company and its predecessors, and the Pete Timber Company. For some years the Missabe Road operated a spur as a common carrier running from Winton 3.7 miles to Hopkins Junction. The spur picked up logs and pulpwood coming in on a logging road to Hopkins Junction. From Hopkins Junction to Farm Camp and thence to Four Town Lake, this private logging railroad of about 11 to 12 miles was operated by the predecessor or predecessors of the Northwest Paper Company. This logging road from Farm Camp to Four Town Lake was discontinued in about 1924 or 1925 and the rails were removed. At about that time, an extension of the logging railroad was built and steel laid from Farm Camp to Angleworm Lake, a distance of about 8 miles. Later, the right of way was extended about 3 miles to a short distance from Gun Lake, but no rails were laid. In 1939 or thereabouts, the Northwest Paper Company

became the owner of certain properties from Hopkins Junction north, and at or about that time it removed the rails on the logging road from Hopkins Junction to Angleworm Lake. The ties, however, were permitted to remain. In 1943, the Pete Timber Company, under contract with the Northwest Paper Company, used the old roadbed and at or about that time removed the ties from Hopkins Junction to Angleworm Lake. Thereafter, the logging road was converted into a truck road for the purpose of hauling timber. During all this time, however, the road was a private logging road and was used as such with its beginning at the end of the Missabe spur at Hopkins Junction. It was not connected with any public highway. It appears that until about 1946 the Pete Timber Company had to bring in its trucks and equipment over the Missabe branch by railway equipment. However, in 1946 or thereabouts, sufficient additional gravel was placed on the Missabe roadbed so that automobiles and trucks could be operated thereon. In February, 1950, the Interstate Commerce Commission authorized the Missabe to abandon its spur line for railroad purposes. It should be stated that in 1947 a gate was installed at Winton at the beginning of the Missabe spur and kept locked, and signs were posted at the gate and at certain places along the entire logging road indicating that the road was a private road and closed for general public use. In 1949, the Northwest Paper Company and the Pete Timber Company cancelled their agreement, and since that year the defendant paper company has operated and had control over the timber lands belonging to it in this area and has had the use of the logging road in question which gave it access to its holdings and operations.

In 1950, the Northwest Paper Company acquired a permit from the United States to maintain a private logging road for a distance of some 4 miles across the lands of the Federal Government in the Superior National Forest. This permit covered the portion of the

old right of way beginning at the entrance of the Roadless Area of the Superior National Forest to the end of the Gun Lake Road. The purpose of the permit was to enable the permittee to remove timber under its control in this area. The permit was issued subject to certain conditions, one of which reads as follows:

"20. The permittee will erect, at its own expense, a gate across the road at some point in Section 4, Township 64 North, Range 12 West, not less than one-half ($\frac{1}{2}$) mile from the roadless area boundary and at a point approved in advance by the Forest Officer in charge. The gate shall consist of a steel cable anchored on each end by steel posts set in concrete. The Forest Officer shall be furnished two keys and have ready access through the gate. Otherwise, the gate shall be so supervised that no one passes through unless on official business in connection with fire protection or protection of life and property."

After receiving the permit, the Northwest Paper Company did erect a gate across the road as required by the permit. This gate has been maintained at the entrance to the Roadless Area ever since, except that it appears there has been some unauthorized tampering with the gate and locks by unknown persons. It is primarily this barrier to the use of the Gun Lake Road of which the plaintiffs complain and which they seek on this motion to prohibit the defendants from maintaining. Plaintiffs contend that, since access to their lands by air on Crooked Lake is prohibited by a Presidential Executive Order, the only practical and feasible means of access to their property is over the Gun Lake Road to Gun Lake and then by streams and established portages for some three miles to the waters of Crooked Lake. It is their position that, for more than 15 years last past, their means of ingress to and egress from their lands on Crooked Lake, other than by air, has been by the use of the Gun Lake Road;

that by such use and the use by others, and by dedication of the road by the owners thereof to the public, their rights to the use thereof have been established. They contend that they will suffer irreparable damage to their resort business if the defendants are permitted to prevent their use of the road in question during the pendency of this action. They contend that they are actual settlers of the lands which they own on Crooked Lake, and the jurisdiction of this Court is based upon Title 16, U.S.C. A. § 478, and the regulations of the Secretary of Agriculture pertaining thereto, Code of Federal Regulations, Title 36, Chapter 11, Sections 251.5, 251.20 and 261.4, also the general provisions in Section 251, Land Uses.

In disposing of this motion, it does not seem necessary to discuss the question of the right of egress and ingress reserved to settlers residing within the boundaries of national forests granted under Section 478, Title 16, U.S.C.A., and the regulations referred to, or the rights of settlers to cross the forest to and from their properties or homes, nor is it necessary to discuss the provision which permits the Secretary of Agriculture to construct wagon roads as may be necessary for such settlers to reach their homes. The particular portion of the road where the gate has been constructed is at the entrance of the Roadless Area of the Superior National Forest, and the Secretary of Agriculture heretofore has ordered that no additional roads can be authorized within this Roadless Area. Consequently, if the Gun Lake Road is a private road, there is no provision in any of the laws or regulations relied upon by the plaintiffs which prohibits the Northwest Paper Company from denying the public its use. Obviously, if a portion of this road is a private road in a Roadless Area, the defendant Pike has not transgressed any rights of the plaintiffs by exercising his jurisdiction as to its limited use by vehicular traffic. The Northwest Paper Company is not complaining of any restrictions imposed upon it as a permittee. The motion seeks

to restrain defendants from preventing plaintiffs from crossing *lands of the United States*. The showing here indicates that the road in certain areas crosses not only lands of the United States, some of it public domain and others acquired by purchase, but private lands as well. Portions of the road cross lands owned by the Northwest Paper Company, the State of Minnesota, the Oliver Iron Mining Company, and the County of St. Louis. Some of the lands over which this road passes is held by registered title. Admittedly, adverse possession could not be obtained over certain portions of the road regardless of the tolerance or acquiescence which the lessees or users thereof may have exhibited in the past. In the Roadless Area itself, it appears that the land where the gate is constructed is United States government public domain land, and then the road crosses lands owned by the Oliver Iron Mining Company, the United States government purchased lands, the Northwest Paper Company lands, and the State of Minnesota lands.

■ It is entirely probable that portions of this road have been used by many parties at times during the past years, covertly or otherwise, without any particular objection by the Northwest Paper Company. But, on this showing, this Court would not be justified in finding that the public has any right of user, either by prescription or dedication, so as to justify the granting of a temporary injunction as requested by the plaintiffs. Certainly, on this motion, there is no showing that would justify a finding that the usage by plaintiffs and others has been of such a character and of such duration that prescriptive rights thereto have inured to the public, or that there has been an intention on the part of the owners of this road to have the road dedicated to public use. Indeed, it can hardly be assumed that the Northwest Paper Company intended to dedicate lands belonging to others to a public use.

■ Here, the plaintiffs are seeking on this motion the ultimate injunctive relief which could be accorded to them on a trial on the merits. They are not seeking to maintain the status quo. Such an extraordinary order as they request should be granted only upon a showing which is impelling. The ties on the roadbed from Hopkins Junction to Angleworm Lake were not removed until some time in 1944, and although there undoubtedly was some vehicular traffic over the ties, the road did not become an all-weather road until some time substantially later. As stated, the Missabe branch as a common carrier was not abandoned until about 1950. And the logging road in question had no connection with a public highway, but commenced at the end of the Missabe steel. The gate at Winton was maintained from 1947 until at least 1950, and signs were posted along the interior of the road stating it was a private road and closed to the public. The gate at the entrance of the Roadless Area has been maintained by the Northwest Paper Company as required by the Federal Government since 1950. At various times in the past, the defendants have recognized that permission from the Federal Government had to be obtained to use the portion of the road in the Roadless Area, and special limited permits were requested and granted to the plaintiff Perko in 1945, 1946, 1953, and as late as 1955. Since 1951, a sign has been maintained by the regional forester on the road at the point where it enters into the Roadless Area announcing that the route is closed to public use and to all vehicular traffic except temporary travel for timber operations. Consequently, the Court determines that, on this showing, it cannot accord to plaintiffs during the pendency of this action the right to use any part of the Gun Lake Road as a public highway. Upon the record before the Court, it cannot grant plaintiffs the right to cross or trespass upon lands of private parties either within or without the Roadless Area by the extraordinary remedy of injunction. Whether the Gun Lake Road is a public road from Winton to the Roadless Area, and the rights, if any, of

plaintiffs to the use of the road in the Roadless Area, are questions which must be deferred to the time of the trial of this action. It is conceded that, since the Roadless Area was established, plaintiffs never used the portion of the Gun Lake Road therein without the special permission of the regional forester under a limited permit.

It follows from the foregoing that plaintiffs' motion for a temporary injunction must be, and the same hereby is, in all things denied. It is so ordered. An exception is allowed.