**UNITED STATES of America, Plaintiff,**

v.

**Joseph PERKO and William Zupancich, Defendants.**

**Civ. No. 1616.**

United States District Court
D. Minnesota, Fifth Division.

July 26, 1955.

George E. MacKinnon, U. S. Atty., Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., Thomas L. McKevitt, Atty., Dept. of Justice, Washington, D. C., E. C. Hotchkiss, Asst. to Gen. Counsel, U. S. Forest Service, Milwaukee, Wis., for plaintiff.

William W. Essling, St. Paul, Minn., for defendants.

DONOVAN, District Judge.

This matter comes before the Court on plaintiff's motion for a temporary injunction restraining and prohibiting the defendants, and each of them, and their servants, employees, representatives and agents from trespassing upon and from aiding, abetting, inducing, procuring and causing others to trespass upon the premises of the plaintiff; from cutting trees, timber, brush or plants upon said premises; from removing any of the soil or gravel from any part of said premises to any other part thereof; from otherwise disturbing the natural character of said premises; from operating any

motor vehicle of any type upon said premises and from moving and removing any gate or other device controlling access thereto.

The premises referred to are within the Superior National Forest and the parts thereof involved in the instant case have to do with the so-called Gun Lake Road and trespass alleged to have been committed therein and thereupon between the said Gun Lake to Wagosh Lake, and from Wagosh Lake to Niki Lake, and from Niki Lake to Papoose Lake, and from Papoose Lake to Friday Bay, all being located in said Superior National Forest, more particularly described as lands located in Township 65 North, Range 11 West, Township 65 North, Range 12 West, Township 66 North, Range 11 West, Township 66 North, Range 12 West, and which hereinafter will be referred to as the Roadless Area.

There has been much litigation about this particular area. Defendants were before this Court on another occasion in connection with an Executive Order of the President of the United States known as No. 10092. Following the issuance of that Order the Government obtained an injunction permanently restraining the defendants of the instant case and all others "from continuing in the future to fly airplanes under certain conditions" and from violating said Executive Order in any way. See United States v. Perko, D.C.Minn., 108 F.Supp. 315, affirmed Perko v. United States, 8 Cir., 204 F.2d 446, certiorari denied by the United States Supreme Court, and all of which will hereinafter be referred to as the Air Ban Case. 346 U.S. 832, 74 S.Ct. 48, 98 L.Ed. 355.

Prior to the issuance of said Executive Order and the litigation that followed in connection therewith the defendants of the instant case had been traveling to and from their properties in the Roadless Area. Defendants had acquired fee title to certain real estate in the Roadless Area in 1939 and 1940. Subsequent to obtaining title thereto defendants developed their property, erected buildings thereupon, and from time to time added thereto until they had established pleasure resorts of considerable value.

Defendants at all times have resided in and owned their homesteads in the city of Ely, St. Louis County, Minnesota.

The defendants during all the times we are herein concerned with have operated and conducted said resorts, inviting the public thereto, advertising them extensively, and systematically developing them over the past fifteen years in such a manner that they have derived substantial portions of their livelihood from the business in connection therewith and the returns of which are in excess of $3,000 per annum to each of them. In improving said resorts they not only have erected buildings but they have established docks, water systems, electric power plants, communication systems, and have moved considerable personal property thereupon and therein. Each of the defendants have placed a value on said resorts and the real estate they own in connection therewith in excess of $300,000. Their land and real estate and improvements are located in part adjacent to the international boundary between the United States and Canada and are in part located upon the international boundary waters between the United States and Canada, which waters are commonly known and referred to as Crooked Lake and the streams and lakes tributary thereto.

Subsequent to the decision of the Air Ban Case by Chief Judge Gunnar H. Nordbye the defendants were confronted by the problem of establishing lawful ingress and egress to and from their resorts. In the Air Ban Case they emphasized that their only means of ingress and egress was by means of airplane, for the Forest Service as early as 1937 and 1939 had been formulating a policy in connection with the methods of use and travel of the original Wilderness Area, comprised of three separate areas known as the Superior Roadless Area, the Little Indian Sioux Roadless Area and the Caribou Roadless Area. As early as 1937 it was the plan of the Forest Serv-

ice to bring about the creation of a continuous area of at least 100,000 acres. The thought back of this was "to prevent the unnecessary elimination or impairment of unique natural values, and to conserve, so far as controlling economic considerations will permit, the opportunity to the public to observe the conditions which existed in the pioneer phases of the Nation's development, and to engage in the forms of outdoor recreation characteristic of that period, thus aiding to preserve national traditions, ideals and characteristics and promoting a truer understanding of historical phases of national progress."

As the Roadless Area was developed the defendants found themselves surrounded by boundary waters and lands of the United States and their only means of ingress and egress have been across said waters and lands in the Superior National Forest by airplane, as hereinbefore described. When this form of ingress and egress was denied them, they became somewhat frustrated and proceeded to take matters into their own hands. There is no dispute about their separating a metal chain by means of a hack saw, which chain had been erected at the instigation of the plaintiff for the purpose of creating a gate or barrier to travel in and upon the Roadless Area by motor vehicle. Pictures are in evidence in this case showing the defendants engaged in the commission of this trespass. There is no dispute that defendants brought into the Roadless Area motor vehicles of heavy construction type for the purpose of widening one of the foot paths in connection with the so-called portages for the purpose of permitting travel by station wagons and trucks. Defendants frankly admit this. Defendants admit removing gravel and similar material from the boundaries of such paths for the purpose of establishing a roadbed for travel beyond the so-called Gun Lake Road, which had its origin in logging roads constructed by the Duluth, Missabe & Iron Range Railway Company, the Pete Timber Company, the Northwest Paper Company, and their predecessors.

For a number of years the Railway Company had operated a spur track as a common carrier for a distance of 3.7 miles between its stations at Winton and Hopkins Junction near the Canadian border. From Hopkins Junction the Swallow-Hopkins Company operated a private logging railroad for approximately twelve miles to a point called Four Town Lake. Like and similar construction extending the logging roads continued from time to time until they reached a point a distance of about three miles from Gun Lake, at which end no steel rails were laid. The Northwest Paper Company came into the picture about 1939 when they acquired the ownership of lands and property north of Hopkins Junction. The latter company removed the steel rails on the logging road which existed from Hopkins Junction to Angleworm Lake but the ties were permitted to remain in place. In 1943 the Pete Timber Company under contract with the Northwest Paper Company used the old roadbed to remove ties from the area, and subsequently the logging road was used for the hauling of timber by truck. During none of the times herein mentioned was any private logging road used in any manner other than by non-public ownership. It was not connected with any public highway and was not in any manner dedicated as a public road. In or about the year 1946 gravel was placed on the old roadbed of the Duluth, Missabe & Iron Range Railway Company so that motor vehicles could be operated thereon. The latter Railway Company had obtained appropriate permission to abandon its line of railroad from Winton north towards Gun Lake.

In 1950 the Northwest Paper Company was granted a permit from the United States to maintain a private logging road for a distance of about four miles and across lands of the Government in the Superior National Forest. This included the old right of way beginning at the entrance to the Roadless Area of the Superior National Forest to the end of the so-called Gun Lake Road, and was issued solely for the purpose of per-

mitting the Paper Company to remove timber controlled by it in the area. The permit among other things required that the Paper Company erect a gate across the road at some point in Section 4, Township 64 North, Range 12 West, "not less than one-half (½) mile from the roadless area boundary and at a point approved in advance by the Forest Officer in charge. The gate shall consist of a steel cable anchored on each end by steel posts set in concrete. The Forest Officer shall be furnished two keys and have ready access through the gate. Otherwise, the gate shall be so supervised that no one passes through unless on official business in connection with fire protection or protection of life and property."

Following the establishment of the foregoing gate at the site indicated in Exhibit 22–A the acts of trespass by defendants were committed.

Obviously, defendants anticipated difficulty and they commenced Civil Action No. 1519 in this Court, entitled Joseph Perko and William Zupancich, Plaintiffs, vs. Northwest Paper Company, Inc., and Galen W. Pike, Defendants, wherein they petitioned the Court for the right to travel along the Gun Lake Road and to establish travel accommodations for their vehicles to and from their resorts. Pending the trial of the case at the December, 1955, general term, plaintiffs applied to the Court for a temporary injunction restraining and prohibiting defendants during the pendency of the action from in any manner preventing plaintiffs from crossing the lands of the United States in traveling to and from plaintiffs' property within the Superior National Forest by motor vehicle, boat and canoe operated upon the Gun Lake Road and the lakes, streams and portage trails connecting Gun Lake and Crooked Lake within the National Forest.

The matter came on for hearing before Chief Judge Gunnar H. Nordbye. It will be observed that the very same relief was sought in the case wherein the defendants of the instant case appeared as plaintiffs in No. 1519 Civil. They were asking the Court to permit them to do the things they later did following a denial of their motion for a temporary injunction by Order of the Court dated May 13, 1955. D.C., 133 F.Supp. 560. In that case denying plaintiffs' motion for a temporary injunction Chief Judge Nordbye among other things said:

"Here, the plaintiffs are seeking on this motion the ultimate injunctive relief which could be accorded to them on a trial on the merits. They are not seeking to maintain the status quo. Such an extraordinary order as they request should be granted only upon a showing which is impelling. The ties on the roadbed from Hopkins Junction to Angleworm Lake were not removed until some time in 1944, and although there undoubtedly was some vehicular traffic over the ties, the road did not become an all-weather road until some time substantially later. As stated, the Missabe branch as a common carrier was not abandoned until about 1950. And the logging road in question had no connection with a public highway, but commenced at the end of the Missabe steel. The gate at Winton was maintained from 1947 until at least 1950, and signs were posted along the interior of the road stating it was a private road and closed to the public. The gate at the entrance of the Roadless Area has been maintained by the Northwest Paper Company as required by the Federal Government since 1950. At various times in the past, the defendants have recognized that permission from the Federal Government had to be obtained to use the portion of the road in the Roadless Area, and special limited permits were requested and granted to the plaintiff Perko in 1945, 1946, 1953, and as late as 1955. Since 1951, a sign has been maintained by the regional forester on the road at the point where it enters into the Roadless Area announcing that the route is closed to

public use and to all vehicular traffic except temporary travel for timber operations. Consequently, the Court determines that, on this showing, it cannot accord to plaintiffs during the pendency of this action the right to use any part of the Gun Lake Road as a public highway. Upon the record before the Court, it cannot grant plaintiffs the right to cross or trespass upon lands of private parties either within or without the Roadless Area by the extraordinary remedy of injunction. Whether the Gun Lake Road is a public road from Winton to the Roadless Area, and the rights, if any, of plaintiffs to the use of the road in the Roadless Area, are questions which must be deferred to the time of the trial of this action. It is conceded that, since the Roadless Area was established, plaintiffs never used the portion of the Gun Lake Road therein without the special permission of the regional forester under a limited permit."

In the instant case the contention of the defendants is identical to that urged by them before this Court in Civil No. 1519. Defendants here contend that since they are denied ingress and egress to their resorts by air, which was prohibited by Presidential Executive Order, that the only practical and feasible means of ingress and egress to their land is via the Gun Lake Road to Gun Lake and then by water and established portages to Crooked Lake. Defendants further contend that since they first purchased their land in that area their means of ingress and egress, aside from air, has been over the so-called Gun Lake Road. They further contend that such use by themselves and others for fifteen years or more has given them, as members of the public, a prescriptive right to the use of that road and that they will suffer irreparable damage to their respective resort businesses if they are prevented from pursuing their course to and from their resorts as actual settlers in the area.

They further contend that as actual settlers of the lands owned by them on Crooked Lake they are entitled to ingress and egress as provided by Title 16, U.S.C.A., Section 478, and regulations promulgated thereunder. See Title 36, Code of Federal Regulations, Chapter 11, sections 251.5 and 261.4. Defendants further contend that Regulation 251.20 of said Title 36 governing the Wilderness Areas does not prohibit ingress and egress. Defendants further contend that to deprive them of ingress and egress to their resorts by motor vehicle or wagon methods is in effect taking their property without due process of law and forcing them to sell for a consideration that is entirely inadequate, thereby violating the Constitution of the United States.

Plaintiff contends that the Shipstead-Nolan Act, set forth in Title 16, U.S.C.A. § 577, and as augmented by the Thye-Blatnik Act, found in Title 16, U.S.C.A. § 577c et seq., prohibit the doing by the defendants of things they admit they did in the spring of 1955 and requires each of the defendants and all other members of the public to refrain from motor vehicle travel at all points in the Roadless Area. Plaintiff further contends that defendant Zupancich had this very thing in mind when in advertising his resort he quotes a prayer that his "camp remain roadless (and in the interest of good fishing to preserve it from) auto highways."

At the outset, it should be stated that the acquisition of the property of the defendants is not in issue. Obviously, this could not be acquired by the Government, for defendants have made it clear to the Court that they do not desire to part with title thereto. Manifestly, defendants' property cannot be taken from them by condemnation without their being lawfully compensated therefor. Defendants' counsel frankly admits in the instant case that defendants are not inviting condemnation by the Government.

It should also be observed that the only thing sought by the Government in the

instant case is the carrying out of the aims and objects of the Government to maintain the natural beauty of the Roadless Area in strict conformity with the Shipstead-Nolan Act, wherein it is prohibited to log the shores of any lake within "four hundred feet from the natural water line."

The first road ban regulation in the Superior National Forest was issued prior to any extended use of travel by aircraft, as permitted by 16 U.S.C.A. § 551. The Secretary of Agriculture, vested with the power of management of national forests, on February 13, 1948, promulgated the "Plan of Management" for the Superior Roadless areas and pointed out therein that "as a matter of general public interest [the Government should maintain] the atmosphere of voyageurs, Indian legends, [and the old canoe routes which] had much to do with the economic, religious, and political development of substantial portions of two nations," as defined by the Webster-Ashburton Treaty of August 9, 1842, which Treaty is quoted from in Perko v. United States, 8 Cir., 204 F.2d 446, at page 448.

In carrying out said plan of management the plaintiff must not violate the Constitution and laws of the United States. The Constitution, of course, covers with the shield of its protection citizens of all classes, at all times and under all circumstances. Pending a determination of the instant case on the merits, care should be exercised by the defendants not to take the law into their own hands. Acts of trespass and malicious mischief should in no manner be encouraged, for such an attitude leads to chaos, confusion, and borders on anarchy.

This Court appreciates the frustration confronting defendants in the shutting off by lawful means of ingress and egress to their property by aircraft followed by their inability to travel to and from their properties over the canoe paths and portages which the Government challenges their right to use by motor vehicle transportation.

True, other land owners in the Roadless Area have been using motor vehicles of one sort or another (some of which are capable of traveling over the lakes and streams) and which these defendants feel is an unjustified discrimination against them. This Court appreciates that defendants, under the circumstances, sense that they are being dealt with unjustly and in a manner foreign to American principles. Plaintiff's principal witness admitted, while testifying in the instant case, that perhaps he permitted one or more of the settlers in the Roadless Area to go too far in this respect and that if he had it to do over again he would not permit them so to do. The answer to all of this, however, is that the controlling acts of Congress make no provision for a remedy against discrimination. The controlling law here is unlike that governing rate structures and the prohibition of shipping by common carrier in interstate commerce in a discriminating manner.

There seems nothing unconstitutional about the methods pursued by the Secretary of Agriculture in establishing the Roadless Areas we are here concerned with and in pursuing the dictation of the Congress of the United States in ordering him to carry out a policy for the use and occupancy of the Superior National Forest with a view to preserving its inherent primeval attributes and preserving the wilderness in a primitive condition in so far as that is possible. In the foregoing respect, Congress, as the representatives of the people, was authorized to do this very thing, maintaining the Superior National Forest as a recreational area for its citizens. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98.

The Court has reviewed the cases cited by counsel and is of the opinion that a temporary injunction should be issued against further acts of trespass in the Roadless Area by the defendants, their agents and employees.

The most recent decision bordering on the problem here presented was decided July 22, 1955, by the Supreme Court of

Minnesota in a case entitled City of St. Paul v. Dalsin, Minn., 71 N.W.2d 855. The last cited case concerned a municipal ordinance regulating an occupation affected with public interest. Holding the ordinance unnecessary, unreasonable and oppressive and imposing restrictions upon one class of persons engaged in the particular business which are not imposed upon others engaged in the same business, it was, therefore, a violation of the equal protection clause of the United States Constitution. In that connection the Court among other things said:

"It is elementary that a classification to be valid must embrace and uniformly affect all who are similarly situated, and the distinctions which separate those who are included from those who are excluded must, upon some reasonable view of the facts, be genuine and substantial so as to provide a reasonable—as distinguished from a merely capricious and arbitrary—basis for the imposition of special legislative regulations.   *   *   * The fact that discriminatory legislation on the part of one political subdivision furnishes no reasonable basis for retaliatory legislation by another political unit, is illustrated by the United States Supreme Court decisions which have arisen under U. S. Const. Amend. XXI," and citing State Board of Equalization of Cal. v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38; Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424; Indianapolis Brewing Co. v. Liquor Control Comm., 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243.

■ While the Dalsin case and the authorities therein referred to border on the problem of discrimination as an evil to be frowned upon in that type of case, nonetheless the problem of the instant case is not particularly helped by the reasoning so clearly enunciated by Mr. Justice Matson because here the canoe routes and ancient passageways used by property owners in the area had been customarily traveled over by foot and motor vehicles for a time prior to the defendants' acquiring their property and are not the routes where trespassing is complained of in the instant case. The Government is interested in maintaining the ancient trails and passageways so as to make the Roadless Area more accessible to all the people who may be interested in recreational activities therein. Obviously, the Government's management plan should be administered as equally and uniformly as possible so as to avoid unjust discrimination. If permits to use motor vehicles are granted in the Roadless Area to one class of citizens, they should be granted to all others of the same class. The law should be universally applied within the Roadless Area, and no special privileges should be granted as a profit to one citizen, the denial of which will result in a loss to another under identical circumstances.

■ In keeping with the spirit and purpose of the Congressional acts and the regulations issued in connection therewith, there can be no objection to pursuing for present purposes a course followed by the pioneers of this great Nation in permitting the defendants to transport goods along the trails in the Roadless Area by pack horse, if necessary. The use of motor vehicles and heavy construction equipment in the Roadless Area is obviously foreign to the spirit and purpose of the controlling law. The Constitution of the United States and laws enacted thereunder must be observed by all of the people. The people may change the law of the United States but the Court cannot do so. The Court can only interpret that law. It may be that prior to the trial of the instant case on the merits some reasonable means may be arrived at in an attempt to solve the problem of the defendants so that equity will be served.

Denial of certiorari by the United States Supreme Court to these defendants in the case of Perko v. United States, supra, left no alternative to the defendants than to abandon ingress and

egress by aircraft and proceed to figure out some means of ingress and egress consistent with the law. Plaintiff may submit findings and conclusions consistent with the foregoing. An exception is allowed.