**DeKALB AGRESEARCH, INC., Appellee,**

v.

**IOWA EMPLOYMENT SECURITY COMMISSION et al., Appellants.**

No. 2–57409.

Supreme Court of Iowa.

Dec. 15, 1976.

Walter F. Maley and Blair H. Dewey, Des Moines, for appellants.

Eli J. Wirtz of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

This dispute stems from the uniqueness of an operation conducted on a 160 acre farm. The question is whether seasonal employees of the operation are agricultural and hence exempt from the employment security law. The trial court ruled the employees were agricultural and not entitled to employment benefits. We agree and affirm the trial court.

Section 96.19(7)(g), The Code, 1973, lists and defines various categories of employment excluded from the employment security act. Section 96.19(7)(g)(4) excludes and defines agricultural labor as follows:

"For purposes of this chapter, the term 'agricultural labor' means any * * * remunerated service performed after December 31, 1971:

"(a) On a farm in the employ of any person in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, * * *.

"(b) In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment * * * if the major part of such service is performed on a farm.

"(c) In connection with the production or harvesting of any commodity defined as an agricultural commodity in section 15(g) of the Agricultural Marketing Act, as amended * * *.

"(d)(i) In the employ of the operator of a farm in handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, in its unmanufactured state, any agricultural or horticultural commodity, but only if such operator produced more than one-half of the commodity with respect to which such service is performed;

"*  *  *  *

"(f) The term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animals, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards."

The controlling question in this case is whether the operation shown by the facts fits within this statutory definition.

DeKalb Agresearch, Inc. (DeKalb) is a Delaware corporation engaged in the production and marketing of hybrid seed corn. It owns and operates a 160 acre farm near Dayton in Webster County. The farm is used to grow and test various hybrids of corn and other crops, to test commercial pesticides and weed killers, and for demonstration purposes.

Approximately 50 acres of the farm are used for testing or demonstration purposes. The remainder of the farm is used to grow crops which will develop a mellow soil. The test and demonstration plots are rotated annually.

Operation of the farm is under the direction of a farm manager. He is aided by a hired man. The hired man resides on the farm and is responsible for maintaining the farm, maintaining the equipment, and preparing the soil for planting in the spring. Beginning approximately April 1 and generally ending some time in December DeKalb hires four to twelve people to work on the farm. The claimants in this action are included in that group.

The group usually works about seven hours per day, five days per week. The starting date for employment, the ending date for employment, the number of workers employed at a given time, and the number of hours worked per week all vary depending on weather and work load.

The claimants' work normally begins with packeting seeds for planting. Prior to planting the farm manager and hired man mark the test plot indicating where each seed is to be planted. The seeds are hand planted by claimants. Additionally claimants record certain information concerning the planting process. After the crops emerge from the ground claimants are involved in thinning the crops to a uniform stand. They hand hoe the crops at this time. Claimants are involved in pollination work and aid in compiling information concerning the crops. In addition claimants mow and remove weeds around the farm in order to enhance the farm's general appearance.

DeKalb sometimes furnishes plots and assistance to other agencies or companies interested in conducting special tests. Claimants usually plant, cultivate, and thin such crops. They also generally clean up those plots at the end of the growing season. Occasionally claimants will aid in the gathering of information with respect to such plots.

Sometime around mid-August DeKalb holds field days to which it invites 3000 to 5000 farmers to view the farm and its test and demonstration plots. Claimants are assigned tasks in connection with the field days.

Before harvest, claimants aid in compiling information concerning the test crops. The test crops are then hand harvested. Claimants aid in certain testing done on the harvested crops and in compiling information concerning the harvest. Some of the crops are ultimately sold to a local grain elevator.

After the harvest most of the employees are released. Three or four generally stay on to aid in unfinished work or to packet seeds. Two of the employees generally stay on to assist in compiling information concerning the farm. The year is completed when the compiled data is sent to DeKalb's statistical department.

The part-time employees collectively work approximately 16,000 hours per year. About 2000 of those hours are spent accumulating data, recording data, and in supervision. All claimants spend some of their working time accumulating and recording data. Two of the claimants spend over 50 percent of their working time collecting and recording data and in supervision.

■ I. We think DeKalb's 160 acre tract is a "farm" as defined in § 96.-19(7)(g)(4)(f). The primary use of the tract is the raising of agricultural and horticultural commodities. In its definition of "farm" the statute does not contemplate an exploration of the subjective intentions behind the raising of agricultural or horticultural commodities. The purpose for which the crops are raised is not a consideration under the definition. The statutory definition is clear and unambiguous. We take it for what it says. See *In re Johnson's Estate*, 213 N.W.2d 536 (Iowa 1973); *State v. Hocker*, 201 N.W.2d 74 (Iowa 1972).

■ II. The trial court ruled the seasonal employees were employed in "agricultural labor" as that term is defined in § 96.-19(7)(g)(4), quoted above. The commission contends this was error, arguing the services performed by claimants were incidental to the over-all commercial activities of DeKalb.

As can be seen the great bulk of claimants' work falls within subsections (a) and (c) of § 96.19(7)(g)(4). This work mainly though not exclusively is directed to cultivating the soil in connection with raising and harvesting crops. DeKalb's goals in the operation may differ in some respects from those of most farm operators. Certainly DeKalb is less interested in a profit than most farm operators. However this does not change the nature of the services performed by the claimants.

Claimants also work in the operation, management, conservation, and maintenance of the farm. Such work falls within the ambit of subsection (b) of § 96.-19(7)(g)(4). Other services performed by claimants are included within the definition of subsection (d)(i) of § 96.19(7)(g)(4) which includes packeting of seed corn in the spring, planting of crops, storage of har-

vested crops, and handling of crops incident to simple moisture tests.

We think it is clear from the statute the legislature intended the services of claimants to be excluded from coverage under the act. The wisdom of the agricultural exclusion is a matter for the legislature. See 81 C.J.S. Social Security and Public Welfare, § 115, pp. 173–176.

■ Our conclusion is supported by federal cases defining the federal social security law. The definition of agricultural labor in the Iowa employment security act is based on the definition of the same term in the federal legislation. *Stromberg Hatchery v. Ia. Emp. Sec. Comm.*, 239 Iowa 1047, 33 N.W.2d 498 (1948). The case of *Farming, Inc. v. Manning*, 121 F.Supp. 252 (D.C. 1954) points out the agricultural labor exemption in the federal legislation is to be interpreted at least in part on the basis of the nature of the services performed by the employees. See also *Scully v. U. S.*, 70 F.Supp. 239, 108 Ct.Cl. 310 (1947); *Latimer v. U. S.*, 52 F.Supp. 228 (D.C.1943).

The trial court was right in holding claimants were engaged in agricultural labor.

■ III. The commission contends a special case should be made for four claimants the commission believes performed nonagricultural labor. These four claimants were more involved than others with field days, record keeping, and supervisory functions. We believe these services were performed "in connection with" producing, raising and harvesting agricultural products within the definitions of § 96.19(7)(g)(4)(a) and (c). See generally Annot., 53 A.L.R.2d 406, 426–430; 76 Am.Jur.2d, Unemployment Compensation, § 29, p. 910; *Stromberg Hatchery*, supra; *Birmingham v. Rucker's Imperial Breeding Farm, Inc.*, 152 F.2d 837 (8 Cir. 1945).

■ We are committed to a broad interpretation of the agricultural exemption. *Stromberg Hatchery*, supra. The activities outlined in the facts presented clearly fall within the agricultural labor exemption.

AFFIRMED.