O'S GOLD SEED COMPANY, Appellant,

v.

IOWA EMPLOYMENT SECURITY COMMISSION and Alma M. Smith, Appellees.

No. 2-58837.

Court of Appeals of Iowa.

Sept. 9, 1977.

Jonathan C. Wilson and Donald A. Wine of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

Robert L. Martin and Blair H. Dewey of the Iowa Employment Security Commission, Des Moines, for appellees.

Heard by ALLBEE, C. J., and DONIELSON, SNELL, OXBERGER and CARTER, JJ.

PER CURIAM.

This appeal presents the very narrow issue of whether the services performed by approximately 70–100 employees of plaintiff, in husking, sorting and grading hybrid seed corn, constitute "employment" subject to section 96.19(7) of the Iowa Employment Security Law. The trial court decided this question in the affirmative. Although that finding coincides with a determination made by the defendant commission with respect to one of these employees, the proceeding in the district court was not an appeal from that administrative determination. It was an action for declaratory judgment. Neither party challenges the procedure thus invoked and we treat the matter accordingly.

■ Plaintiff contends the group of employees involved performed services which are exempt from coverage under the employment security law. In support of this contention sole reliance is placed upon the exemption provided by subparagraph (c) of section 96.19(7)(g)(4), The Code. The basic Code section provides, in part, that covered employment under the employment security law shall not include "agricultural labor." Under the subparagraph relied upon by plaintiff "agricultural labor" is defined to include, with respect to services performed after December 31, 1971,[1] services performed:

(c) In connection with the production or harvesting of any commodity defined as an agricultural commodity in section 15(g) of the Agricultural Marketing Act, as amended [46 Stat. 1550, Sec. 3, 12 U.S.C. 1141j], or in connection with ginning of cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, used exclusively for supplying and storing water for farming purposes.

The trial court, in holding that the type of services involved in the present case are not exempt under subparagraph (c), concluded that the services enumerated therein must be performed "on a farm" in order to qualify as agricultural labor.[2] We do not believe the legislative history of this subparagraph of the act will support this theory [2a] but we agree with the trial court's ultimate conclusion that the services in question are not exempted by subparagraph (c).

■ I As plaintiff urges us to do in its brief, we seek to give subparagraph (c) the same meaning as was intended by the federal legislation from which it has been derived. This is consistent with the holding of our supreme court in *Stromberg Hatchery v. Iowa Employment Security Comm.*, 239 Iowa 1047, 33 N.W.2d 498 (1948) which characterizes the federal legislation as "uniform social legislation to be adopted by the state legislatures." Our legislature subse-

---

1. The services performed in the present case were all performed subsequent to this date.

2. Plaintiff's employees perform their husking, sorting and grading services at a centrally located plant to which the harvested corn from area farmers is transported.

2a. As noted in the subsequent text of this opinion subparagraph (c) of section 96.19(7)(g)(4) was derived from federal social security legislation enacted in 1939 and our supreme court has held that it should be given the same interpretation as the federal legislation. The legislative history of the federal act clearly suggests that the services listed under subparagraph (c) will be excepted whether or not performed on a farm. *See* H.R.Rep. No. 728, 76th Cong., 1st sess. 51–53 (1939); S.Rep. No. 734, 76th Cong., 1st sess. 61–64 (1939).

quent to *Stromberg* has amended our statute to correspond with each subsequent amendment to the federal legislation.

■ The House and Senate reports referring to the original federal legislation (being the Social Security Act Amendments of 1939), which were at first codified only in the Internal Revenue Code of 1939 as Title 26 § 1426(h), both indicate that the provisions of the federal equivalent of section 96.19(7)(g)(4)(c) extend only to the types of services specifically enumerated therein.[3] Services performed in connection with the production or harvesting of hybrid seed corn, as taken from the field or in subsequently enhancing same by sorting and grading, have never been specifically enumerated as part of the federal definition, as amended. Plaintiff seeks to qualify such services as being performed in connection with a "commodity defined as an agricultural commodity in § 15(g) of the Agricultural Marketing Act, as amended." The cited section of the latter statute refers specifically to only crude gum, gum spirits of turpentine, and gum rosin. The Senate and House reports referring to the 1939 federal legislation indicate that the reference to section 15(g) of the Agricultural Marketing Act excepts from the federal social security taxes only those services relating to production or harvesting of crude gum, gum spirits of turpentine, and gum

rosin.[4] Similarly, the legislative history of subsequent federal legislation defining "agricultural labor" for social security purposes indicates that no broader meaning should be accorded this provision.[5]

We further note that commencing with administrative regulations promulgated by the Treasury Department on September 12, 1940, (Treas.Reg. 107, 5 Federal Register 3710–11) and continuing with subsequent regulations under the Internal Revenue Code of 1939, 26 U.S.C. § 1426(h)(3); the Internal Revenue Code of 1954, 26 U.S.C. § 3121(g)(3); the Federal Unemployment Tax Act, 26 U.S.C. § 3306;[6] and the amendments to the Social Security Act of 1950 and 1970, 42 U.S.C. § 410, the applicable administrative regulations have all assumed that commodities defined by § 15(g) of the Agricultural Marketing Act for purposes of the federal definition of "agricultural labor" include only crude gum, gum spirits of turpentine and gum rosin.[7] We do not choose to deviate from this view in our interpretation of the identically worded statutory enactment of this state. If the reference to section 15(g) of the Agricultural Marketing Act were to include, as plaintiff suggests, services performed in connection with all commodities encompassed within the dictionary definition of "agricultural commodity" it would so extend the exemption as to render the limitations of

3. *See* House and Senate reports cited in footnote 2a.

4. *See* House and Senate reports cited in footnote 2a.

5. For example, with respect to the 1950 amendments to the Social Security Act deleting certain specifically designated services from the federal equivalent of the subparagraph (c) definition of agricultural labor, but retaining the reference to the Agricultural Marketing Act, a conference committee report on the bill stated: "This specific exclusion from employment under the Senate amendment of service performed in connection with the production or harvesting of any commodity defined as an agricultural commodity in section 15(g) of the Agricultural Marketing Act, as amended, applies only to service performed in connection with the production or harvesting of crude gum (oleoresin) from a living tree or the processing of such crude gum into gum spirits of turpentine and gum rosin." Conference Report 2771

81st Cong., 2nd sess., 2 U.S.Code Congressional Service, 3287, 3483–84 (1950). To the same effect see letter from Deputy Commissioner of Internal Revenue, 1 CCH Unemployment Insurance Reporter, para. 10, 432 at p. 525–26.

6. 68A Stat. 453 (1954). Regulations under this statute are particularly persuasive in the interpretation of the Iowa Employment Security Law as state contributions may be credited against 90% of the federal tax.

7. *See* Treas.Reg. 107, § 403.208(d), 5 F.R. 3710–11 (Sept. 18, 1940); Treas.Reg. 115, § 404.-102(c)(4), 8 F.R. 12265 (Sept. 7, 1943); Treas. Reg. 120, § 406.216(d), 18 F.R. 8774 (Dec. 29, 1953), made applicable to Internal Revenue Code of 1954 by T.D. 6091, 19 F.R. 5167 (Aug. 17, 1954); and HEW Employee Benefits Regulations, 20 C.F.R. § 404.1008, 32 F.R. 7758 (May 27, 1967).

subparagraphs (a), (b) and (d) of section 96.19(7)(g)(4) meaningless. The limited application given this portion of the definition, consistent with federal law, serves to compliment the other subparagraphs of the definition.

II. Because plaintiff's sole reliance as a source for its claimed exemption is upon subparagraph (c) of section 96.19(7)(g)(4), our construction of that section is dispositive of its entitlement to exempt status under the act. We add, however, that we believe the legislative history of what is now subparagraph (d) of that statute further supports the result which we reach. This statute relates to post-harvesting processing of agricultural commodities including "grading." As originally enacted it granted exempt status to such services regardless of whether performed on a farm or in the employ of a farm operator.[8] This subparagraph was also derived from the Social Security Act amendments of 1939, and this federal legislation was held in *Producers Crop Improvement Association v. Dallman,* 178 F.2d 66 (7th Cir. 1949) to grant exempt status to services performed in the sorting and grading of hybrid seed corn similar to the services involved in the present case. Thereafter, in 1950 congress amended the federal statute so as to provide that such post-harvesting activities were exempt only if performed in the employ of a farm operator or a group of farm operators. The Iowa statute was thereafter amended so as to be identical with the federal legislation. 64th General Assembly, ch. 113 §§ 23–28 (1971). We believe this is consistent with a legislative intent to include such services under the unemployment security law.

We do not deem our construction of this legislation to be inconsistent with the holding of the Supreme Court in *Stromberg Hatchery v. Iowa Employment Security Comm.,* supra, or *DeKalb Agresearch v. Iowa Employment Security Comm.,* 248 N.W.2d 101 (Iowa 1976). As previously noted *Stromberg* involved the hatching of poultry which, at the time of the decision, was a service specifically enumerated in subparagraph (c). The *DeKalb* case involved services performed "in connection with" services exempt under subparagraph (a) of section 96.19(7)(g)(4). Any reference to subparagraph (c) in the *DeKalb* case was not necessary to the decision. The court; in *DeKalb,* acknowledges that "the definition of agricultural labor in the Iowa employment security act is based on the definition of the same term in the federal legislation." As we have stated the federal legislation has never been interpreted as including services of the type performed by plaintiff's employees.

III. Because our construction of the act is such that it is not material where the services are performed in determining their exempt status, plaintiff's constitutional challenge to the legislation is not applicable.

The result reached by the trial court is correct and is affirmed.

All judges concur except DONIELSON, J., who specially concurs.

DONIELSON, Judge (concurring specially).

Although I concur with the majority opinion, I do wish to note my agreement with the trial court's observation that if, as alleged by the plaintiff, the corn is not "produced" until it is "processed", these employees are not exempt agricultural workers since subparagraph (d)(i) specifically requires that they be in the employ of the operator of the farm. In further support of that proposition, the trial court added that the word "processing" is specifically mentioned in that subparagraph.

I agree with the trial court's conclusion that the employees engaged in weighing, husking, sorting and grading ears of corn on O's Gold premises are no longer part of the production and harvesting of an agricultural product. The trial court astutely concluded that the employment exemption was forfeited when the corn was harvested and put into the plaintiff's truck, at which time the farmer lost all economic interest in and control over the product.

---

8. 1943 Iowa Acts, 50th General Assembly, ch. 69, § 4; ch. 77, § 1.

I also wish to add that I do not subscribe to the view that under subparagraph (c), all work must be done on the farm. Rather, it is my position that when the producer has completed his agricultural contribution to production, and the product has moved to the control, supervision, or ownership of another, the agricultural exemption is no longer available. Where, as in *DeKalb Agresearch v. Iowa Employment Security Comm.*, supra, the agricultural producer is also the processor, that portion attributable to the actual agricultural responsibility falls within the exempt category. Beyond that, however, the exemption no longer applies, whether or not the work is done on the farm. I strongly believe that this interpretation not only comports with the language of *DeKalb* and its policy of broad interpretation of agricultural exemptions, but also does justice to the equally important policy of providing unemployment compensation which is expressed in § 96.2, The Code.